[Cite as *State v. Sanchez-Garza*, 2017-Ohio-1234.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO.   CA2016-02-036 |
| | : | O P I N I O N |
| - vs - | | 4/3/2017 |
| | : | |
| GERALDO J. SANCHEZ-GARZA, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM BUTLER COUNTY AREA II COURT
Case No. CRB 1500092B

Michael T. Gmoser, Butler County Prosecuting Attorney, Michael Greer, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for plaintiff-appellee

Scott N. Blauvelt, 315 Monument Avenue, Hamilton, Ohio 45011, for defendant-appellant

**HENDRICKSON, P.J.**

{¶ 1} Defendant-appellant, Geraldo J. Sanchez-Garza ("Garza"), appeals his conviction in the Butler County Area II Court for sexual imposition.  For the reasons discussed below, we affirm the judgment of the trial court.

{¶ 2} The victim – a 14-year-old child – testified that on July 22, 2013, she and her friend H. were at their friend L.'s home for a sleepover.  Also at the home was Garza (L.'s father), Garza's wife, and Garza's son, M.

{¶ 3} That night, the victim and the other children (L., H., and M.) watched television together in the basement. L., H., and M. eventually went to sleep on couches in the basement. There was no more room on the couches to accommodate the victim so she went upstairs and slept in L.'s bedroom.

{¶ 4} The next morning, the victim woke up to the sound of Garza's wife opening the garage door to leave for work. Shortly thereafter, Garza entered L.'s bedroom and sat down on the bed next to the victim. The victim was lying on her stomach.

{¶ 5} Garza began to rub the victim's back over her shirt. The victim testified that she thought this was "weird" but also that Garza was just being nice to her. In this regard, the victim said that she had been best friends with L. for eight years and that Garza was like a second father to her.

{¶ 6} Garza continued to rub the victim's back and moved his hand under her clothing. Garza and the victim said nothing to one another while this was happening. Garza then began rubbing the victim's buttocks, with his hand under her clothes.

{¶ 7} Garza next rolled the victim onto her side and lay down behind her, which the victim described as "spooning." The victim testified that Garza began to "dry hump" her, which she said meant that he was "putting his penis up against my butt, pushing up against me." The victim testified that she could feel Garza's erect penis on her back.

{¶ 8} The victim said she was terrified and thought that Garza was going to rape her. She got out of the bed, followed by Garza. As she was leaving the room the victim told Garza she needed to get her phone and he asked why. She responded that she needed to check Instagram (a social media phone application). She explained that this was a lie but it was all she could think to say. Garza then told her not to tell anyone what happened because he would get in trouble.

{¶ 9} The victim testified that she ran downstairs to where the other children were

sleeping and woke up H. While crying, the victim told H. that she thought that Garza had tried to rape her. L. and M. were apparently awake for this conversation.

{¶ 10} The children heard Garza come down the stairs to the basement. The victim fled into a nearby laundry room. The other children pretended to be asleep.

{¶ 11} Garza went into the laundry room and asked the victim what she was doing. The victim said, "nothing." She then began angrily screaming at Garza, stating "you know what you did to me!" Garza responded, saying "why would you say that" and "I didn't do that." At trial, H. described Garza's reaction as "panicked" and "defensive."

{¶ 12} Garza called his wife, who came home from work. In front of Garza, the victim told Garza's wife what happened. The victim said that Garza then started "dying laughing when I was trying to tell her, like he thought it was all just a big joke." Garza's wife drove the victim back to her home and relayed the accusation to the victim's mother.

{¶ 13} The state charged Garza with sexual imposition, a violation of R.C. 2907.06 and unlawful restraint, a violation of R.C. 2905.03, both third-degree misdemeanors. At Garza's bench trial, the state introduced the testimony of the victim, H., and investigating police officer Doug Leist.

{¶ 14} During the trial, and over Garza's objection, H. testified as to what the victim said to her that morning. Also during H.'s testimony, the prosecutor asked her whether she had any reason to "disbelieve" what the victim told her. Again, over objection, H. answered that she did not.

{¶ 15} Officer Leist testified that he interviewed the victim and was present when she was interviewed at a child advocacy center. Officer Leist testified that the victim's trial testimony was consistent with both interviews. The prosecutor also asked Officer Leist questions concerning Garza's refusal to speak with him before and after his arrest. Garza did not object to these lines of inquiry.

{¶ 16} The court found Garza guilty of sexual imposition and not guilty of unlawful restraint. The court sentenced Garza to 60 days in jail, all of which were suspended, and two years of community control. The court also designated Garza a Tier I sexual offender.

{¶ 17} Garza presents us with four assignments of error.

{¶ 18} Assignment of Error No. 1:

{¶ 19} THE EVIDENCE WAS INSUFFICIENT TO SUPPORT THE APPELLANT'S CONVICTION AND THE VERDICT WAS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 20} Garza argues that his conviction for sexual imposition was supported by insufficient evidence and was against the manifest weight of the evidence. He contends that the state failed to prove that his contact with the victim was for sexual gratification. Garza also argues that the state did not meet its burden under R.C. 2907.06(B), which required evidence corroborating the victim's testimony.

{¶ 21} When reviewing the sufficiency of the evidence to support a criminal conviction, an appellate court's function is to examine the evidence admitted at trial to determine whether such evidence, viewed in a light most favorable to the prosecution, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 17. In determining whether a judgment is against the manifest weight of the evidence, an appellate court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Cooper*, 12th Dist. Butler No. CA2010-05-113, 2011-Ohio-1630, ¶ 7. The discretionary power to grant a new trial should be exercised only in exceptional cases where the evidence weighs heavily against the conviction. *State v.*

*Thompkins*, 78 Ohio St.3d 380, 387 (1997).

## CONTACT FOR PURPOSE OF SEXUAL GRATIFICATION

{¶ 22}   The state convicted Garza of a violation of R.C. 2907.06(A)(4), which generally prohibits adults from having "sexual contact" with minors between thirteen and sixteen years of age.  The Revised Code defines "sexual contact" as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, *for the purpose of sexually arousing or gratifying either person.*" R.C. 2907.01(B).  (Emphasis added.)

{¶ 23}   Garza argues that the evidence showed that what occurred could have been nothing more than a back massage that was misinterpreted by the victim as sexual.  We disagree.  The victim testified that Garza rubbed her buttocks underneath her clothes.  He then began to "dry hump" her and she felt his erection.  The victim's testimony, if believed, readily supports the conclusion that Garza's physical contact with the victim was for the purpose of his own sexual gratification.

## CORROBORATION

{¶ 24}   Garza argues that the state failed to sufficiently corroborate the victim's allegations as required by R.C. 2907.06(B).  Garza argues that the only direct evidence of sexual imposition was the victim's testimony and that the only circumstantial evidence was H.'s testimony that she observed the victim crying immediately following the incident, which Garza contends was insufficient corroborating evidence.  Garza concedes that there was other corroborating evidence in the form of H's testimony about what the victim told her Garza did.  However, Garza contends this testimony was inadmissible hearsay.

{¶ 25}   Pursuant to R.C. 2907.06(B), "[n]o person shall be convicted of a violation of [sexual imposition] solely upon the victim's testimony unsupported by other evidence."  In *State v. Economo*, 76 Ohio St.3d 56 (1996), the Ohio Supreme Court examined the

corroboration requirement of R.C. 2907.06(B). The Court held that R.C. 2907.06(B) "does not mandate proof of the facts which are the very substance of the crime charged * * *." *Id.* at 59. Further, the Court found that the corroborating evidence necessary to satisfy R.C. 2907.06(B) need not be independently sufficient to convict the accused, and it need not go to every essential element of the crime charged. *Id.* at 60. Slight circumstances or evidence that tends to support the victim's testimony is satisfactory. *Id.*

**{¶ 26}** H. confirmed that the victim was at Garza's house for a sleepover the night before the incident. H. verified that the victim went upstairs to sleep in L.'s bedroom around midnight because she did not want to sleep on the basement floor. The victim woke up H. and was crying. The victim told H. that she thought Garza tried to rape her, that he put his hands down her pants, and that he began "grinding" on her.[1] H. confirmed the victim hid in the laundry room when Garza came downstairs. H. testified that the victim screamed at Garza, "you know what you did to me," to which Garza replied "I didn't do that." Based on the standard set forth in *Economo*, we conclude that the foregoing evidence sufficiently corroborated the victim's testimony as required by R.C. 2907.06(B).

## SUFFICIENCY AND MANIFEST WEIGHT OF THE EVIDENCE

**{¶ 27}** With respect to sufficiency, the victim testified that she was 14 years old at the time of the incident, that Garza rubbed her buttocks, and that he began "dry humping" her. She felt his erection on her back. The victim ran downstairs and immediately told her friend she thought Garza tried to rape her. H. confirmed that the victim was crying and very upset immediately following the incident and that she relayed her allegations. This evidence was sufficient to permit the factfinder to find Garza guilty of sexual imposition beyond a reasonable doubt.

---

1. We address the admissibility of these statements as an exception to hearsay, as well as nonhearsay in response to Garza's second assignment of error.

{¶ 28} With respect to the manifest weight of the evidence, this case necessarily relied upon the trial court finding the victim and H. credible. In general, we defer to the factfinder on issues of witness credibility. *State v. Andrews*, 12th Dist. Butler No. CA2009-02-052, 2010-Ohio-108, ¶ 46. There is nothing in the record that would make us second guess the trial court's finding. Accordingly, we conclude that Garza's conviction was supported by sufficient evidence and by the manifest weight of the evidence. This assignment of error is meritless and is overruled.

{¶ 29} Assignment of Error No. 2:

{¶ 30} THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT WHERE IT ALLOWED INADMISSIBLE HEARSAY EVIDENCE AT TRIAL.

{¶ 31} Garza argues that the trial court abused its discretion by allowing H. to testify as to what the victim said to her that morning. Garza also argues that the court committed plain error by allowing Officer Leist to testify that the victim's trial testimony was consistent with her prior interviews with him and at a child advocacy center.

## H.'S TESTIMONY

{¶ 32} Over objection, the trial court allowed H. to testify about the victim's statements that morning, i.e., that the victim thought Garza tried to rape her, that he put his hands in her pants, and that he started "grinding" on her. The court allowed this testimony based upon the finding that it was an "excited utterance." Garza contends that the victim's statements were not the product of stress or excitement but instead were reflections. Garza argues that although the victim was crying, she had the wherewithal to lie to Garza about needing to leave the bedroom to use her phone.

{¶ 33} "A trial court has broad discretion in the admission and the exclusion of evidence and unless it clearly abused its discretion and appellant is materially prejudiced thereby, an appellate court should not disturb the decision of the trial court." *State v. Martin*,

12th Dist. Butler No. CA2007-01-022, 2007-Ohio-7073, ¶ 9, citing *State v. Finnerty*, 45 Ohio St.3d 104, 109 (1989). An abuse of discretion suggests the trial court's decision was unreasonable, arbitrary or unconscionable. *State v. Perkins*, 12th Dist. Clinton No. CA2005-01-002, 2005-Ohio-6557, ¶ 8. "A review under the abuse-of-discretion standard is a deferential review." *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, ¶ 14.

{¶ 34} Hearsay, which is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted," is generally inadmissible at trial. Evid.R. 801(C) and 802. However, Evid.R. 803(2) provides a hearsay exception for an "excited utterance," which is defined as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." The controlling factor in analyzing whether a statement is an excited utterance is whether the declaration was made under such circumstances as would reasonably show that it resulted from impulse rather than reason and reflection. *State v. Knecht*, 12th Dist. Warren No. CA2015-04-037, 2015-Ohio-4316, ¶ 27.

{¶ 35} We conclude that the trial court did not abuse its discretion in allowing H. to testify as to the victim's statements inculpating Garza. The evidence showed the victim's statements to H. occurred minutes after the incident. The victim woke up H. and began telling her what occurred while "balling" or crying the "entire time." H. further testified that the victim's demeanor was "distressed, very upset," "panicked," and "scared." We conclude these facts demonstrate the victim's statements to H. resulted from impulse and the stress of the situation and not reason and reflection. We do not agree with Garza that the victim's ability to make up a reason to leave the bedroom indicates that she was calmly reacting to what just occurred.

{¶ 36} Moreover, even if we concluded this testimony was not admissible as an

excited utterance, we would conclude the testimony was otherwise admissible as nonhearsay. To qualify as hearsay, an out-of-court statement must be offered to prove the truth of the matter asserted. Evid.R. 801(C). In this case, the victim had earlier testified about her statements to H. Therefore, the state's purpose in introducing H.'s testimony was not as substantive proof that that Garza committed the acts described but to demonstrate that the victim quickly reported the incident, which is a relevant concern for the corroboration requirement under R.C. 2907.06(B). See *Economo*, 76 Ohio St.3d at 59. Accordingly, this argument lacks merit.

### OFFICER LEIST'S TESTIMONY

{¶ 37} During his testimony, the state asked Officer Leist whether the victim's trial testimony was consistent with her statements to him in several interviews he conducted or observed. Leist confirmed that the victim's testimony was consistent. Garza admits that Leist did not testify as to what the victim said in the interviews but that his responses to the state's questions had the effect of disclosing the content of her out-of-court statements. Garza also concedes that he did not object to this line of questioning and thus has waived all but plain error.

{¶ 38} "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). Plain error does not exist unless, but for the error, the outcome of the trial would have been different. *State v. Blacker*, 12th Dist. Warren No. CA2008-07-094, 2009-Ohio-5519, ¶ 39.

{¶ 39} Officer Leist did not testify as to any statement the victim made during the interviews. Thus, his affirmative responses to the state's line of questioning were not themselves hearsay. Nonetheless, we agree with Garza that the questions effectively disclosed the victim's out-of-court statements. However, even if we concluded that it was error for the court to allow this line of questioning and testimony, we cannot find plain error

because we do not perceive that Garza suffered prejudice. The victim testified and was subject to cross-examination on her past statements. If there were inconsistencies, Garza had the opportunity to draw out these issues. In sum, we do not find that the absence of this brief portion of testimony would have changed the result at trial. Accordingly, this assignment of error is overruled.

{¶ 40} Assignment of Error No. 3:

{¶ 41} APPELLANT WAS DENIED HIS RIGHT TO DUE PROCESS AND A FAIR TRIAL DUE TO PROSECUTORIAL MISCONDUCT.

{¶ 42} Garza contends that the state committed prosecutorial misconduct and denied him a fair trial when it elicited testimony from H. and Officer Leist regarding their opinions about the victim's credibility. In addition, Garza contends the state introduced evidence that Garcia exercised his constitutional right to remain silent as proof of guilt. Garza admits that he only objected to some of these claimed errors.

{¶ 43} A court will find prosecutorial misconduct only when the conduct complained of was improper and prejudicially affected substantial rights of the defendant. *State v. Layne*, 12th Dist. Clermont No. CA2009-07-043, 2010-Ohio-2308, ¶ 58. The focus of an inquiry into allegations of prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor. *State v. Gray*, 12th Dist. Butler No. CA2011-09-176, 2012-Ohio-4769, ¶ 57. Therefore, a finding of prosecutorial misconduct will not be grounds for reversal unless the defendant has been denied a fair trial because of the prosecutor's prejudicial conduct. *Layne* at ¶ 60. The Constitution does not guarantee an "error free, perfect trial." *State v. Landrum*, 53 Ohio St.3d 107, 112 (1990).

## BOLSTERING TESTIMONY

{¶ 44} Garza contends that the state committed prosecutorial misconduct by impermissibly using lay witness testimony to bolster the victim's credibility. The state, on

redirect, twice asked H. if she believed what the victim told her that morning. Counsel objected both times although those objections were based on different grounds, i.e., speculation and relevancy. The trial court overruled the objections and permitted H. to testify that she believed the victim. Garza also raises the issue of the state asking Officer Leist whether the victim's trial testimony was consistent with her earlier statements.

{¶ 45} The state argues that Garza invited this line of questioning because Garza's counsel sought to establish through H.'s cross-examination that the victim had a motivation to fabricate her allegations. We disagree that Garza opened the door to this line on questioning. Evid.R. 608(A) provides: "[t]he credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise."

{¶ 46} While Garza suggested through cross-examination questions that the victim might have a reason to fabricate an allegation against him, he did not introduce evidence attacking her character for truthfulness. Thus, Evid.R 608(A) did not permit the state to introduce opinion testimony concerning the victim's character.

{¶ 47} Lay witnesses are prohibited from testifying as to another witness' veracity. *State v. Cappadonia*, 12th Dist. Warren No. CA2008-11-138, 2010-Ohio-494, ¶ 36. "[I]t is the fact-finder who bears the burden of assessing the credibility and veracity of witnesses." *Id*. at ¶ 17. Therefore, this line of questioning was improper. However, assuming we found that this rose to the level of prosecutorial misconduct, we do not perceive that this error caused Garza to receive an unfair trial.

{¶ 48} Garza received a bench trial and that fact weighs considerably in our analysis. We can generally presume that a judge, sitting as factfinder, only considers relevant, material

and competent evidence in determining guilt. *State v. Flores*, 12th Dist. Warren No. CA2014-03-037, 2014-Ohio-5751, ¶ 29. The state's improper attempt at bolstering the victim's credibility was brief in terms of the overall trial. The victim testified at length and was subject to cross-examination. Consequently, the trial judge had the opportunity to assess the victim's credibility by witnessing her demeanor, independent of any improper witness vouching. See *Cappadonia* at ¶ 37.

<u>EVIDENCE OF GARZA EXERCISING 5TH AMENDMENT RIGHT</u>

**{¶ 49}** The use of a defendant's pre-arrest silence as substantive evidence of guilt violates the Fifth Amendment privilege against self-incrimination. *State v. Leach*, 102 Ohio St.3d 135, 2004-Ohio-2147, ¶ 38. Similarly, a defendant's post-arrest silence cannot be used against him. *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240 (1976).

**{¶ 50}** Towards the end of his testimony on direct examination, the state asked Officer Leist whether he spoke with Garza. Leist stated that he attempted to set up a meeting with Garza and his wife but that neither showed and later he had contact with an attorney stating that Garza would not be interviewed. Officer Leist also testified that on the day of the arrest he asked Garza if he would like to make a statement after being read his *Miranda* rights. Officer Leist confirmed that Garza did not make a statement. Garza did not object to any of this testimony. If the state violated Garza's constitutional rights under the Fifth Amendment, then we must conclude that the constitutional error was harmless beyond a reasonable doubt to sustain Garza's conviction. See *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, paragraph two of the syllabus (1967).

**{¶ 51}** Unquestionably, this line of inquiry by the prosecutor was highly improper and constituted prosecutorial misconduct. However, we find the prosecutor's misconduct was harmless beyond a reasonable doubt. That this was a bench trial again weighs most heavily in our analysis. We can generally presume that the trial court sitting as factfinder

understands that pre-arrest and post-arrest silence cannot be used to determine guilt. Moreover, in the scope of the trial these comments were brief. The victim testified, the trial court found her credible, and the victim's allegations were sufficiently corroborated. Garza's reaction of "I didn't do that" to the victim's general accusation of "you know what you did to me" indicates he was aware of what the victim was accusing him of before entering the laundry room, which he could not have known otherwise. And Garza's unnatural reaction of "dying laughing" while listening to the victim relate her allegations further corroborates the victim's claims. Accordingly, we are convinced beyond a reasonable doubt that Garza would have been found guilty in the absence of this instance of prosecutorial misconduct. We overrule this assignment of error.

{¶ 52} Assignment of Error No. 4:

{¶ 53} APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL.

{¶ 54} Garza claims that he received ineffective assistance from trial counsel when counsel failed to object to the state's questioning of Officer Leist concerning the victim's prior statements and Garza's pre-arrest and post-arrest silence. Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *State v. Hendrix*, 12th Dist. Butler No. CA2012-05-109, 2012-Ohio-5610, ¶ 14. To prevail on an ineffective assistance of counsel claim, Garza must show his trial counsel's performance fell below an objective standard of reasonableness and that he was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052 (1984).

{¶ 55} To demonstrate prejudice, Garza must establish that, but for his trial counsel's errors, there is a reasonable probability that the result of trial would have been different. *State v. Kinsworthy*, 12th Dist. Warren No. CA2013-06-053, 2014-Ohio-1584, ¶ 42. A

"reasonable probability" is a probability that is "sufficient to undermine confidence in the outcome." *Strickland* at 694. The failure to make an adequate showing on either prong is fatal to an ineffective assistance of counsel claim. *Kinsworthy* at ¶ 42.

{¶ 56} Garza cannot demonstrate ineffective assistance with respect to counsel's failure to object to Officer Leist's testimony concerning the victim's prior statements for the same reasons we articulated in response to Garza's second assignment of error. The victim testified and Garza had the ability to cross-examine and draw out any inconsistencies in her prior statements. Accordingly, we conclude that the outcome at trial would not have changed but for Garza's counsel successfully objecting to this evidence and therefore Garza cannot establish prejudice with respect to this issue.

{¶ 57} Garza also cannot demonstrate ineffective assistance with respect to his counsel not objecting to the state's line of questioning concerning his right to remain silent. First, there was an obvious strategic reason not to object as counsel may have wanted to avoid focusing the trial court on this evidence. In such a case, the failure to object is strategic and we do not second guess trial strategy. See *State v. Smallwood*, 12th Dist. Butler No. CA1995-12-209, 1996 Ohio App. LEXIS 4536, *7-8 (Oct. 14, 1996). Second, even if this was not trial strategy, we are confident beyond a reasonable doubt that the outcome at trial would not have changed in the absence of this improper evidence. As discussed previously, this was a bench, not a jury trial. We can presume that the court only considered the relevant, competent, and admissible evidence admitted, which sufficiently and credibly demonstrated Garza's guilt. Consequently, Garza cannot demonstrate prejudice with respect to this issue. This assignment of error is overruled.

{¶ 58} Judgment affirmed.

PIPER and M. POWELL, JJ., concur.