[Cite as *State v. Williams*, 2025-Ohio-2190.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

FAYETTE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2024-05-010 |
| | : | |
| - vs - | : | OPINION AND |
| | : | JUDGMENT ENTRY |
| | | 6/23/2025 |
| THOMAS F. WILLIAMS, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM FAYETTE COUNTY COURT OF COMMON PLEAS
Case No. CRI 20230109

Jess Weade, Fayette County Prosecuting Attorney, and Andrew Sievers, Assistant Prosecuting Attorney, for appellee.

Caleb Johnson and Anthony D. Maiorano, for appellant.

---

# **O P I N I O N**

**BYRNE, P.J.**

{¶ 1}   Thomas F. Williams appeals from his conviction for felony possession of marihuana. For the reasons discussed below, we affirm Williams' conviction.

## I. Factual and Procedural Background

{¶ 2}    In April 2023, a Fayette County grand jury indicted Williams on one count of possession of marihuana, a felony of the fifth degree. The indictment alleged that Williams knowingly possessed a quantity of marihuana that equaled or exceeded 200 grams but was less than 1,000 grams.[1]

{¶ 3}    The indictment arose after police executed a search warrant at Williams' apartment. During the search, officers seized numerous jars or other containers holding suspected marihuana. The officers combined the suspected marihuana into one plastic evidence bag and sent the bag to the Bureau of Criminal Investigation ("BCI") for weighing and analysis. The material in the bag tested positive for marihuana and its weight was approximately 305 grams.

## A. The Trial

{¶ 4}    At trial, the sole contested issue was the weight of the marihuana. Williams' counsel admitted in opening statements that Williams used and possessed marihuana, but contested the weight.

### 1. Sergeant Jeffrey Heinz's Testimony

{¶ 5}    Sergeant Jeffrey Heinz testified that he worked for the Washington Court House Police Department. Sergeant Heinz executed the search warrant at Williams' apartment. He and another officer found suspected marihuana throughout the apartment. Most of the marihuana was stored in glass jars in various locations. Sergeant Heinz

---

1 On November 7, 2023, the citizens of Ohio approved the "Issue 2" initiative, which enacted R.C. Chapter 3780. As a result, as of December 7, 2023, state law permitted individuals 21 years and older to consume or possess 2.5 ounces of marihuana (approximately 70 grams). R.C. 3780.36(B)(1)(a). Issue 2 did not explicitly repeal the prior criminal prohibitions for marihuana use set forth in Chapter 2925.  Under the law in effect prior to the adoption of Issue 2, if the drug in question was marihuana in a quantity greater than 200 grams but less than 1,000 grams, the offense was a felony of the fifth degree. R.C. 2925.11(C)(3)(c). The offense charged here occurred prior to the effective date of the Issue 2 initiative and we only consider relevant pre-Issue 2 case law and statutes.

explained that when he and the other officer located suspected marihuana, they photographed it in the location where it was discovered and then moved it to a central location in the apartment.

{¶ 6} Sergeant Heinz reviewed various State exhibits, which included photographs of the marihuana found throughout the apartment. During this review of the evidence, Sergeant Heinz testified about State's Exhibit 40, a photograph of a plastic coffee can containing a plastic yellow liner and some material inside the liner. Sergeant Heinz stated that the material was "a little bit of stems and different items of the marihuana that people don't typically smoke."

{¶ 7} Sergeant Heinz testified that all of the marihuana seized in the apartment was transferred back to the police station. At the station, he combined the suspected marihuana into a single plastic evidence bag and weighed it. The approximate weight was 300 grams. That weight included the contents of the coffee can depicted in State's Exhibit 40. The State introduced the combined bag of marihuana into evidence as State's Exhibit 2.

### 2. Elizabeth Wolford's Testimony

{¶ 8} Elizabeth Wolford is a drug chemist who works at BCI. Wolford testified that she weighed and analyzed the contents of State's Exhibit 2. The Exhibit weighed 305.5 grams. Wolford took a sample of the contents of State's Exhibit 2 and conducted a color test. She also conducted a macroscopic and microscopic analysis of this sample. These tests were positive for marihuana.

{¶ 9} Wolford also tested the sample for delta-9 tetrahydrocannabinol ("THC") content. Wolford testified that a THC content under 0.3% was considered hemp and was legal. A THC content over 0.3% was considered marihuana and was illegal. The sample she tested returned a THC content of 8.9%.

{¶ 10} Wolford testified that the stalks of a marihuana plant, if there was no leaf material attached to them, would not be considered marihuana and it was her office's policy to remove any stalks from any bags sent to them for testing. But, referring to State's Exhibit 2, she stated that it contained bud material and did not have any stalks in it.

{¶ 11} On cross-examination, Wolford testified that the sample she took from State's Exhibit 2 weighed 5.01 grams. Regarding the contents of Exhibit 2, Wolford testified that it was "mostly" buds and stems but not stalks. Wolford testified that if she was sent a package of suspected marihuana containing only stems and no bud or leaf material, she would not test it for THC content. Wolford explained that the mature stalks and stems have the least amount of THC, while the bud material has the highest amount of THC, and the leaf has "some" THC.

### B. Jury Instructions

{¶ 12} During trial, counsel and the court discussed jury instructions. Williams' counsel asked the court to instruct the jurors on the legal definition of hemp and to explain that they could not consider the weight of hemp in determining the weight of marihuana seized. The court denied this request, commenting that there had been no evidence presented at trial that Williams possessed hemp.

{¶ 13} Williams' counsel also requested that the court instruct jurors on a lesser-included-offense of misdemeanor marihuana possession. The court denied the request, stating that the jury would have to determine whether Williams' possessed over 200 grams of marihuana and if the jury found he possessed less than 200 grams, he "walks."

### C. The Verdict, Sentencing, and Appeal

{¶ 14} The jury returned a guilty verdict and the court sentenced Williams to a term of community control. Williams appealed, raising three assignments of error.

### II. Law and Analysis

- 4 -

**A. *Brady* Violation**

{¶ 15} Williams' first assignment of error states:

THE STATE DESTROYED MATERIAL EVIDENCE IN VIOLATION OF BRADY AND YOUNGBLOOD.

{¶ 16} Williams contends that the State violated his due process rights by "practically destroy[ing]" materially exculpatory evidence. Williams contends that State's Exhibit 40 (the photograph of the coffee can containing suspected marihuana) "shows what clearly appears to be mature stalks" of marihuana, and that mature stalks of the marihuana plant do not constitute illegal marihuana under the Revised Code. Williams contends that by combining these mature stalks with the remainder of the seized marihuana in State's Exhibit 2, the State made it impossible for him to determine the weight of the illegal marihuana in State's Exhibit 2. Williams also argues that Sergeant Heinz acted in bad faith when he combined the contents of the coffee can with the remainder of the seized marihuana.

**1. General Principles of the *Brady* Doctrine**

{¶ 17} In *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the United States Supreme Court held that due process requires the prosecution to provide the defense with any evidence favorable to the accused that is material either to guilt or punishment. The *Brady* doctrine stands for the proposition that the government violates a defendant's right to due process when it achieves a conviction through perjured testimony, or by withholding evidence that is "'so clearly supportive of a claim of innocence that it gives the prosecution notice of a duty to produce.'" *State v. Widmer*, 2013-Ohio-62, ¶ 32 (12th Dist.), quoting *United States v. Agurs*, 427 U.S. 97, 107 (1976).

{¶ 18} *Brady* imposes upon the government the obligation to "'turn over evidence in its possession that is both favorable to the accused and material to guilt or

punishment.'" *Id*. at ¶ 33, quoting *United States v. Presser*, 844 F.2d 1275, 1281 (6th Cir. 1988). The test for whether the State has infringed on a defendant's *Brady* due process rights by losing or destroying evidence is whether the evidence was materially exculpatory, rather than merely "potentially useful." *State v. Powell*, 2012-Ohio-2577, ¶ 73.

{¶ 19} In *California v. Trombetta*, 467 U.S. 479, 488-489 (1984), the United States Supreme Court held that the government violates a defendant's due process rights when material exculpatory evidence is not preserved. Evidence is material when it has an "exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.* at 489. Evidence is "potentially useful" when "no more can be said than that [the evidence] could have been subjected to tests, the results of which might have exonerated the defendant." *Powell* at ¶ 76, quoting *Arizona v. Youngblood*, 488 U.S. 51, 57 (1988). If the evidence is only potentially useful, then the defendant must show bad faith on part of the State in its failure to preserve the evidence. *Id.* at ¶ 77.

## 2. The Statutory Definition of Marihuana and Exclusions

{¶ 20} R.C. 2925.01(AA) provides that "marihuana" "has the same meaning as in section 3719.01 of the Revised Code. . . "

{¶ 21} Under R.C. 3719.01(M), "marihuana" is defined as:

> all parts of a plant of the genus cannabis, whether growing or not; the seeds of a plant of that type; the resin extracted from a part of a plant of that type; and every compound, manufacture, salt, derivative, mixture, or preparation of a plant of that type or of its seeds or resin. "Marihuana" does not include the mature stalks of the plant, fiber produced from the stalks, oils or cake made from the seeds of the plant, or any other compound, manufacture, salt, derivative, mixture, or preparation of the mature stalks, except the resin extracted

from the mature stalks, fiber, oil or cake, or the sterilized seed of the plant that is incapable of germination. "Marihuana" does not include "hemp" or a "hemp product" as those terms are defined in section 928.01 of the Revised Code.

{¶ 22} Construing a previous version of this statutory definition, which at the time was codified at R.C. 3719.01(Q) rather than (M), the Ohio Supreme Court held that the exclusions described in the second sentence of R.C. 3719.01(Q) applied only when the substance consisted *solely* of mature stalks, sterilized seeds, or the other excluded materials described in that section. *State v. Wolpe*, 11 Ohio St.3d 50, 52 (1984). The court arrived at this conclusion by observing that the legislature defined "marihuana" as "*all parts* of any plant of the genus cannabis, whether growing or not." (Emphasis added.) *Id.* at 51-52. Therefore, "marihuana," as initially defined, necessarily included those "parts" described in the exclusion sentence. *Id.* at 52. The court reasoned that for the parts in the second sentence to be excluded from the definition of "marihuana," those parts must have already been separated from the non-excluded portions of the plant. *Id.*

{¶ 23} The statutory language defining marihuana and subsection has changed since *Wolpe* was decided. However, for our purposes, the statutory language change is non-substantive. The proposition of law stated in *Wolpe* remains controlling today. *See State v. Hartkemeyer*, 2014-Ohio-3560, ¶ 11, fn. 3 (discussing the "slightly different" wording of the statute reviewed in *Wolpe*).

{¶ 24} Based on *Wolpe* and a subsequent Ohio Supreme Court decision, *State v. Davis*, 16 Ohio St.3d 34 (1985), we have observed that "the parts of marihuana plant that are excludable pursuant to the statutory definition must be physically separated from the rest of the plant while in the possession of the defendant in order to be excluded from the calculation of weight." *Hartkemeyer* at ¶ 12.

{¶ 25} Before we move on to analyze the issues, we note that Williams also argues

that the content of the coffee can should be considered "hemp," which, as stated above, is also excluded from the definition of marihuana in R.C. 3719.01(M). Williams bases this argument on Wolford's testimony that the stems contain a lesser amount of THC than the buds and leaves and that she would not test a package of suspected marihuana containing only stems. "Hemp' is defined by R.C. 928.01(C), as,

> the plant Cannabis sativa L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than three-tenths per cent on a dry weight basis.

### 3. Analysis

{¶ 26} Williams argues that the State committed a *Brady* violation by combining the contents of the coffee can depicted in State's Exhibit 40 with the remainder of the seized marihuana. Williams argues that because State's Exhibit 40 depicted "exclusively stalks or stems" or "what clearly appears to be mature stalks," and since *Wolpe* has been the law since 1984, then the State was aware that the contents of the coffee can could not legally constitute marihuana and should not have been combined with the remainder of the seized marihuana. Williams argues that the State's failure to keep the contents of the coffee can segregated from the remainder of the marihuana "destroyed" the evidence in a way that made him unable to obtain the weight of the purported stalks and stems in the coffee can.

{¶ 27} We find no merit to this argument. Williams' entire argument is premised on the concept that the coffee can "clearly" and "exclusively" contained "mature stalks" or "stalks or stems." However, there is little evidence in the record to substantiate this assertion. Sergeant Heinz did state that the can contained "a little bit of stems and different items of the marihuana that people don't typically smoke." So, at best, we know

that the coffee can contained "stems." But stems are not excluded from the definition of marihuana under R.C. 3719.01(M). Under that statutory definition, all parts of the cannabis plant are considered marihuana with the exception of mature stalks, the mature-stalk derivatives, and the other derivative items mentioned in the statute, none of which are stems.

{¶ 28} We can only guess what other parts of the plant were also contained in the coffee can. Sergeant Heinz's statement that the can contained stems and "different items of the marihuana that people don't typically smoke" does not necessarily mean that the can contained mature stalks or other items that were statutorily required to be excluded from the bulk weight analysis. Sergeant Heinz said nothing about the can containing mature stalks. And even if we assumed that the coffee can contained mature stalks, there is no evidence in the record that would demonstrate that those mature stalks had been separated from the other parts of the plant, requiring exclusion.

{¶ 29} Moreover, BCI Chemist Wolford was clear in her testimony that State's Exhibit 2 *did not* contain any stalks. She described State's Exhibit 2 as "mostly bud, stems, but not . . . stalks." Williams provided no testimony or evidence to contradict Wolford's testimony. And Wolford testified that she would not have tested a container that "was only stems and not bud or leaf material."

{¶ 30} Williams repeatedly claims that State's Exhibit 40, the photograph of the coffee can, "clearly" demonstrates that the coffee can contained mature stalks. Upon our review of State's Exhibit 40, it is not clear what if anything is contained in the coffee can. At best, it appears that the coffee can contains some green plant substance, but even that is difficult to discern from the photograph. It is far from "clear" that the coffee can contains mature stalks. Williams admits as much in his reply brief, where he concedes that the contents of the coffee can are, "at the very worst, stems." And in his argument in

support of his second assignment of error, he characterizes the contents of the coffee can as "exclusively stems." Williams' inconsistencies in this regard illustrate that he is merely speculating as to the contents of the coffee can.

{¶ 31} The jury was able to observe the contents of State's Exhibit 2 in person during trial. State's Exhibit 2 is depicted in our record in State's Exhibit 35, which is a photograph of State's Exhibit 2 being weighed. State's Exhibit 35 does not in any way corroborate Williams' claim that a substantial, or really *any* amount of the seized marihuana consisted of mature stalks. Instead, it is readily apparent that most of the material in State's Exhibit 2 is cannabis bud material. There is one clearly visible stem, and perhaps a few other items that might be stems. But the *vast* majority of material depicted in this image is plainly marihuana buds or leaf material. This is consistent with the other State's exhibits depicting numerous glass containers recovered at the apartment seemingly containing only bud material.

{¶ 32} In sum, Williams' argument about the content of the coffee can is entirely speculative. It is not supported by the evidence in the record, which demonstrated that State's Exhibit 2 did not contain mature, separated stalks that would be excluded as marihuana under R.C. 3719.01(M).

{¶ 33} Because Williams' argument is entirely speculative and is otherwise not supported by the evidence, he has not demonstrated that the evidence he claims was destroyed by the State was materially exculpatory or even potentially useful. For that reason, he has not demonstrated a presumed due process violation under *Brady* or *Trombetta* and the bad faith analysis under *Youngblood* is irrelevant.

{¶ 34} We overrule Williams' first assignment of error.

**B. Jury Instructions**

{¶ 35} Williams' second assignment of error states:

- 10 -

TRIAL COURT ABUSED ITS DISCRETION IN GIVING JURY INSTRUCTIONS.

{¶ 36} Williams argues that the trial court abused its discretion in failing to give two particular jury instructions requested by Williams. First, Williams argues that the trial court should have instructed the jury on the legal definition of "hemp" and that hemp cannot be considered in determining the bulk weight of marihuana. Second, Williams claims that the trial court should have provided the jury with an instruction on minor-misdemeanor possession of marihuana as a lesser-included-offense. We will address those arguments after addressing the relevant standard of review.

### 1. Standard of Review

{¶ 37} "Jury instructions are matters which are left to the sound discretion of the trial court." *State v. Carreiro*, 2013-Ohio-1103, ¶ 13 (12th Dist.). When reviewing a refusal to give a requested jury instruction, an appellate court considers whether the trial court's refusal was an abuse of discretion under the facts and circumstances of the case. *State v. Wolons*, 44 Ohio St.3d 64, 68 (1989).

{¶ 38} "Ordinarily, requested instructions should be given if they are correct statements of the law, applicable to the facts in the case, and reasonable minds could reach the conclusion sought by the specific instruction." *Carreiro* at ¶ 14. However, "the trial court is not required to include proposed jury instructions which are repetitive and would simply confuse the jury." *State v. Ossege*, 2014-Ohio-3186, ¶ 40 (12th Dist.). Therefore, "'[i]n reviewing a trial court's decision on jury instructions, an appellate court's role is to ascertain whether the trial court abused its discretion in refusing to give a proposed instruction, and, if so, whether that refusal was prejudicial.'" *Id.*, quoting *State v. Ray*, 2013-Ohio-3671, ¶ 25 (12th Dist.).

### 2. Hemp Instruction

- 11 -

{¶ 39} During trial, Williams' defense counsel requested that the court instruct the jury on the legal definition of hemp. In support, defense counsel pointed to testimony by Wolford that hemp was made legal federally and at the state level in 2019. Defense counsel also pointed to Wolford's testimony about the percentage of THC necessary to constitute hemp.

{¶ 40} The court responded, "And was there any other testimony whatsoever in this case that hemp was involved in this case? I didn't hear any." Defense counsel replied that Wolford had indicated that stems "or what she described as stems" contain less THC than other parts of the plant and that if they were "stored separately" then there was at least an "inference" that the separately stored stems could be considered hemp. The court responded that it did not believe there was any evidence to that effect introduced at trial and that it would therefore not alter the jury instructions as requested.

{¶ 41} We find no abuse of discretion in the court's decision. As stated above, jury instructions must be "applicable to the facts in the case." *Carreiro*, 2013-Ohio-1103 at ¶ 14. First, there was no evidence of hemp presented at trial. There was testimony describing "hemp" generally. But there was no testimony or other evidence that the materials seized qualified as hemp. Wolford testified that she examined a sample of the contents of State's Exhibit 2 for color and from a macroscopic and microscopic level and determined that the material appeared consistent with marihuana. She then took a sample of the material and it returned a THC content of 8.9%, which is considerably higher than the less-than-0.3% threshold necessary for hemp.

{¶ 42} Second, to the extent that William's defense counsel was arguing that stems are "hemp," this argument is unsupported by the Revised Code. As previously discussed, R.C. 3719.01(M) establishes that stems are considered part of the marihuana plant and are not excluded. Wolford's testimony that she would not test a container if it only

- 12 -

contained stems does not mean that stems are "hemp." Nor did this testimony suggest that Wolford would not weigh stems when they were not separated from the other parts of the marihuana plant. That is, testing and weighing are distinct facets of the analysis.

{¶ 43} In sum, because there was no evidence at trial that the contents of State's Exhibit 2 contained hemp, the court did not abuse its discretion in declining to advise jurors on the definition of hemp.

### 3. Lesser-Included Offense Instruction

{¶ 44} Williams contends that the trial court erred in failing to give a lesser-included offense instruction for minor-misdemeanor possession of marihuana (less than 100 grams).

### a. Applicable Law

{¶ 45} In considering whether to instruct a jury on lesser offenses, a trial court must first determine whether an offense is a lesser-included offense of the crime charged. *State v. Evans*, 122 Ohio St.3d 381, 2009-Ohio-2974, ¶ 13. If the court answers that inquiry affirmatively, then it must proceed to determine whether the evidence in the case supports an instruction on the lesser-included offense. *Id.*

### b. Analysis

{¶ 46} There is no dispute here that minor-misdemeanor marihuana possession is a lesser-included offense of the felony of the fifth-degree possession offense charged by the State. Williams' argument therefore is that the evidence in the case supported an instruction on minor-misdemeanor possession.

{¶ 47} Williams' argument on appeal is that the jury could have found that he possessed less than 100 grams of marihuana (the maximum threshold for a minor-misdemeanor marihuana possession charge) based on (1) Wolford's testimony that her sample size was approximately 5.01 grams, (2) "evidence the Folgers can contained

mature stalks of a cannabis plant," and (3) evidence that "Sgt. Heinz combined all of the plant material together into a single bag."

{¶ 48} We find no merit to this argument. The evidence presented at trial was that the seized marihuana weighed over 300 grams. As set forth above, there was no competent evidence submitted of any "mature stalks" having been included in State's Exhibit 2. Wolford stated that there were no mature stalks and a basic examination of State's Exhibit 35 reveals no such stalks. If the jury had accepted Williams' argument that a substantial portion of the recovered marihuana did not constitute marihuana as defined in the jury instructions, then it should have found him not guilty and he would have been acquitted on the charge.

{¶ 49} This was not a close case where the jury may have chosen a lesser-included-offense based on weakness in the State's case. The proof of Williams' guilt was overwhelming and Williams has not demonstrated any prejudice.

{¶ 50} We overrule Williams' second assignment of error.

### C. Prosecutorial Misconduct

{¶ 51} Williams' third assignment of error states:

> THE STATE COMMITTED PROSECUTORIAL MISCONDUCT BY CONTINUING TO DISPLAY PREJUDICIAL AND INFLAMMATORY ITEMS AFTER THE COURT SUSTAINED DEFENDANT'S OBJECTIONS.

{¶ 52} Williams argues that the State committed prosecutorial misconduct by (1) attempting to display a photograph of drug paraphernalia (a straw and a dollar bill), when the trial court had previously ruled that a similar photograph would be excluded, and (2) by displaying a box apparently containing numerous marihuana pipes, when the trial court had previously ruled that photographs only showing pipes would not be admitted into evidence.

- 14 -

**1. Applicable Law**

**{¶ 53}** A court will find prosecutorial misconduct only when the conduct complained of was improper and prejudicially affected substantial rights of the defendant. *State v. Sanchez-Garza*, 2017-Ohio-1234, ¶ 43 (12th Dist.), citing *State v. Layne*, 2010-Ohio-2308, ¶ 58 (12th Dist.). The focus of an inquiry into allegations of prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor. *Id.*, citing *State v. Gray*, 2012-Ohio-4769, ¶ 57 (12th Dist.). Therefore, a finding of prosecutorial misconduct will not be grounds for reversal unless the defendant has been denied a fair trial because of the prosecutor's prejudicial conduct. *Id.* citing *Layne* at ¶ 60. "The Constitution does not guarantee an 'error free, perfect trial . . . .'" *State v. Landrum*, 53 Ohio St.3d 107, 112 (1990), quoting *United States v. Hastings*, 461 U.S. 499, 508 (1983).

**2. Display of "Straw and Dollar Bill" Photograph**

**{¶ 54}** During Sergeant Heinz's testimony, while the State was reviewing various photographs of Williams' apartment, the State asked Sergeant Heinz to describe State's Exhibit 46. The following exchange occurred:

> Sergeant Heinz: Uh, [State's Exhibit] Forty-Six, is basically the kitchen cabinet pulled out. There was a folded up dollar bill and a straw was inside there. And then.
>
> Prosecutor: So, is the dollar bill with a straw?
>
> Williams' Counsel: Objection, Your Honor.
>
> Court: I would sustain that.
>
> Prosecutor: Alright, [State's Exhibit] Forty-seven.
>
> Sergeant Heinz: Just a closer image of the.
>
> Williams' Counsel: Objection.
>
> Court: Well, is it a closer image of Forty-six?
>
> Sergeant Heinz: Yes.

- 15 -

Court: Sustained.

{¶ 55} It is not clear from our record whether State's Exhibits 46 and 47 were published to the jury during Sergeant Heinz's testimony. Williams does not specify whether the photographs were published but argues in his brief that the State attempted to "introduce" State's Exhibit 47 notwithstanding the trial court's sustaining an objection to State's Exhibit 46.

{¶ 56} If the State published State's Exhibit 47 to the jury after the court sustained an objection to State's Exhibit 46, then this was at best a mistake, and at worst a concerning disregard for the court's order. Regardless, the trial court sustained Williams' objections to State's Exhibits 46 and 47, excluded them from evidence, and later instructed the jurors that they were not to consider "statements or answers that were stricken by the court or which you were instructed to disregard." We presume that a jury follows the trial court's instructions. *State v. Swing*, 2017-Ohio-8039, ¶ 81 (12th Dist.). We therefore find no prejudice even if the photographs were published to the jury.

{¶ 57} Similarly, if the photographs were not published to the jury, we find no evidence of prejudice. Jurors would have heard Sergeant Heinz's brief description of the content of State's Exhibit 46 as depicting a straw and a dollar bill, which *might* be understood to indicate the presence of unrelated drug paraphernalia at the apartment. But we fail to see how this stray reference could have impacted the jury in a way that would have prejudiced Williams, particularly given our analysis regarding prejudice above. And as set forth previously, Williams' conviction was supported by overwhelming admissible evidence of his possession of a quantity of marihuana in excess of 200 grams. We do not believe that the jury could have been swayed by the brief publication of an image indicating that Williams' apartment contained irrelevant drug paraphernalia.

### 3. Display of Box Containing Marihuana Smoking Pipes

{¶ 58} During trial, Williams objected to photographs depicting marihuana smoking pipes as irrelevant. The trial court agreed, in part. The court ruled that it would admit photographs with marihuana pipes if the photograph also displayed the marihuana at issue in this case, but, "if its [sic] just to bring out a pipe, for the sake of bringing out a pipe, I'm not going to allow you to do that."

{¶ 59} According to Williams, during trial, both before and after the trial court's ruling on the marihuana pipes issue, an evidence box containing an unknown number of marihuana pipes which had been seized during the execution of the search warrant was present on the State's trial desk. Williams asserts that these pipes in the box were visible to jurors for some indeterminate time until defense counsel eventually objected.

{¶ 60} The record on appeal is not developed on this issue. The record reflects that the court ruled that it would not allow the State to introduce evidence that solely related to pipes. But there is nothing in the record indicating that the jurors observed the marihuana pipes in the box. In support of the proposition that the jurors observed these pipes, Williams points to two pages of the transcript, where defense counsel, during Sergeant Heinz's testimony concerning the State's exhibits, asked to approach the bench. The following exchange then occurred:

> Prosecutor: Alright, let me show you uh, some additional exhibits.
>
> Defense counsel: Your Honor, objection, um, I believe some of them were just excluded as out publicly, I want that put away.
>
> Court: Would you put [State's Exhibit] one back in the box please.
>
> Prosecutor: Well. Okay.
>
> Court: Alright, you may proceed.

{¶ 61} The prosecutor then continued reviewing physical exhibits with Sergeant Heinz, beginning with a recovered glass jar.

{¶ 62} It appears that defense counsel may have objected to the State's display of State's Exhibit 1, which was possibly a pipe, which had already been excluded by the court's earlier ruling. It is not clear from the record what State's Exhibit 1 was (the Plaintiff's Exhibit list does not describe it) or whether any juror saw State's Exhibit 1, or if any jurors saw any pipes whatsoever.

{¶ 63} As set forth above, it is not clear from the record what occurred with regard to any public display of marihuana smoking pipes. Regardless, it is difficult for us to perceive how Williams was prejudiced by a brief display of a smoking pipe or multiple smoking pipes. The court had already ruled that the jurors would be allowed to consider photographs of smoking pipes if they also depicted the marihuana at issue in the case. (Williams did not appeal that decision.) So the jurors would have already been aware of the presence of smoking pipes in Williams' apartment regardless of whether they saw a physical pipe during the trial proceedings. Furthermore, the issue of whether Williams used marihuana was conceded during opening statements. The issue at trial was not whether Williams used marihuana but whether the State proved a sufficient weight to support the felony charge. The presence of smoking pipes at the apartment was irrelevant and we cannot find prejudice on this record.

{¶ 64} For these reasons, we find that Williams has not established prejudice based on the claimed instances of prosecutorial misconduct. We overrule Williams' third assignment of error.

## III. Conclusion

{¶ 65} Williams has failed to demonstrate any due process violation as a result of

the State combining the seized marihuana for purposes of weighing. The trial court did not abuse its discretion in declining to give the jury instructions requested by Williams. And Williams failed to establish prejudice in any instance of claimed prosecutorial misconduct.

{¶ 66} Judgment affirmed.

HENDRICKSON and M. POWELL, JJ., concur.

---

# J U D G M E N T   E N T R Y

The assignments of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed.

It is further ordered that a mandate be sent to the Fayette County Court of Common Pleas for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.

/s/ Matthew R. Byrne, Presiding Judge

/s/ Robert A. Hendrickson, Judge

/s/ Mike Powell, Judge