[Cite as *State v. Liming*, 2019-Ohio-82.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NOS. CA2018-05-028 |
| | | CA2018-05-029 |
| | : | |
| - vs - | | O P I N I O N |
| | : | 1/14/2019 |
| TYLER LIMING, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2017CR000573

D. Vincent Faris, Clermont County Prosecuting Attorney, Nick Horton, 76 South Riverside Drive, 2nd Floor, Batavia, OH 45103, for appellee

Stagnaro Hannigan Koop, Co., LPA, Michaela M. Stagnaro, 30 Garfield Place, Suite 760, Cincinnati, OH 45202, for appellant

**S. POWELL, P.J.**

{¶ 1} Appellant, Tyler Liming, appeals from his conviction and aggregate 14-year prison sentence he received in the Clermont County Court of Common Pleas after he pled guilty to involuntary manslaughter, aggravated trafficking in drugs, and engaging in a pattern of corrupt activity. For the reasons outlined below, we affirm the trial court's decision.

**Indictments and Bill of Particulars**

{¶ 2} On September 26, 2017, the Clermont County Grand Jury returned a five-count indictment charging Liming with involuntary manslaughter, corrupting another with drugs, two counts of aggravated trafficking in drugs, and aggravated possession of drugs. According to the bill of particulars, these charges arose after Liming provided Brendann Payne the drug U-47700 that ultimately resulted in Payne's death.[1] During the investigation into Payne's death, the bill of particulars indicates Liming was found to be in possession of an additional 35 pills identified as the drug U-47700 that investigators believed Liming intended to sell.

{¶ 3} On February 8, 2018, the Clermont County Grand Jury returned an additional four-count indictment charging Liming with engaging in a pattern of corrupt activity, trafficking in LSD, trafficking in drugs, and trafficking in hashish. According to the bill of particulars, these charges arose after it was discovered Liming was involved with a group of individuals whom he either engaged with or encouraged to commit a variety of criminal offenses. These offenses included, but were not limited to, the possession and trafficking of the drugs U-47700, LSD, Alprazolam (Xanax), hashish, Oxycodone, cocaine, methamphetamine, and MDMA. The bill of particulars indicates Liming obtained these drugs from the "dark web."[2] The drugs were then delivered to Liming's apartment or another location where Liming had access. Liming then sold the drugs himself or had another person sell the drugs on his behalf.

---

1. The drug U-47700 is a highly potent synthetic opioid that is eight times stronger than morphine. The drug is oftentimes pressed into a pill form to resemble legal painkillers. The drug that caused Payne's death in this case was branded as a Percocet – a legal painkiller that is used to help relieve moderate to severe pain.

2. The "dark web" is a term used to refer to a collection of websites on an encrypted network that cannot be found by using traditional search engines or visited by using traditional Internet browsers. Although legitimate business may be conducted through the dark web, the dark web is oftentimes used for illegal activity such as illegal trade and media exchange for pedophiles and terrorists.

**Liming's Guilty Plea**

{¶ 4}    On March 22, 2018, Liming entered a guilty plea to involuntary manslaughter, aggravated trafficking in drugs, and engaging in a pattern of corrupt activity.  In exchange for Liming's guilty plea, the state agreed to dismiss the remaining charges against him. After conducting the necessary Crim.R. 11 plea colloquy, the trial court accepted Liming's guilty plea.  The trial court then ordered a presentence-investigative report ("PSI") and scheduled the matter for sentencing.

**Sentencing Memoranda**

{¶ 5}    On March 30, 2018, Liming filed a sentencing memorandum.  As part of this memorandum, Liming noted that he would be 26 years old at the time of sentencing.  Liming also noted that he had graduated high school and that he had previously maintained "sporadic employment" as a machinist at an industrial firm and as a manager of a local fast food restaurant.  Liming further noted his minimal criminal history and his guilty plea.  This, according to Liming, indicated that he had "accepted complete and full responsibility" for his actions.  Concluding, Liming advocated against imposing consecutive sentences by noting he "is a young man with very little prior record."

{¶ 6}    On April 16, 2018, the state filed its own sentencing memorandum.  As part of this memorandum, the state provided evidence indicating Liming had been involved in trafficking a wide variety of drugs as early as January of 2016.  The state also provided evidence indicating Liming's drug trafficking activity expanded rapidly after he began purchasing illegal drugs from the dark web.  This includes the drug U-47700 that ultimately resulted in Payne's death.  This, according to the state, led to Liming being considered "a major drug dealer in Clermont County" who investigators believed had brought an "enormous amount" of drugs into Clermont County.

**{¶ 7}** The state provided further evidence that Liming continued his drug trafficking enterprise even after Payne's death by purchasing more illegal drugs from the dark web. This resulted in Liming fleeing to Florida after he received a tip that the police were continuing their investigation into his involvement in Payne's death. Liming was eventually apprehended in Florida and extradited to Ohio. Once in Ohio, Liming made a series of jailhouse phone calls where he recounted his unwillingness to lead a law-abiding life. Specifically, as Liming stated during one of these calls, "I can't stop breaking the law, and I need to." Liming also stated that "this case isn't going to stop me from doing shit" and that "I don't think I should be charged for this stupid kid's death."

**Sentencing Hearing**

**{¶ 8}** On April 26, 2018, the parties reconvened for purposes of sentencing. During this hearing, Liming's trial counsel notified the trial court that the bulk of his argument in mitigation was contained in his sentencing memorandum. However, although generally deferring to his sentencing memorandum, Liming's trial counsel also noted Liming's age and a "very minimal" criminal history. Liming's trial counsel further noted the findings set forth in the PSI; namely, that Liming had been sexually abused as a child, thus leading to his own prolonged illegal drug use. Liming's trial counsel concluded by claim Liming "feels horrible about what happened here to Mr. Payne. If he knew this was going to happen, he never would have given Mr. Payne the pill."

**{¶ 9}** Liming then spoke in allocution, wherein he apologized for his actions and noted his own drug addiction. Liming also referenced his jail-house phone calls, stating: "I was quoted saying I can't stop breaking the law and I need to. That was a spiritual awakening I believe I was meant to have as a result of being incarcerated." Liming thereafter stated, "I'm not asking for a light sentence but a fair one. In the wake of my

actions, I'm aware a prison sentence is not only mandatory, but necessary."

{¶ 10} The trial court then heard from several of Payne's friends and family members who, nearly unanimously, advocated for the trial court to impose the maximum sentence allowable. The state next responded by noting the serious nature of the offenses and the need to punish Liming for his conduct. This, according to the state, could be achieved by sentencing Liming to a prison term of 15 to 20 years. The trial court then addressed Payne's friends and family members in attendance. As part of this exchange, the trial court stated the following:

> So justice as defined by our legal system is me applying the statutes that exist, going through the considerations and the facts that I'm required to go through, considering all the facts and circumstances, and then rendering the decision that I believe is appropriate in these circumstances. I'm going to do that and I'm going to explain to everybody, certainly including Mr. Liming, the rationale in terms of why I'm imposing the sentence that I'm imposing.

{¶ 11} The trial court also noted that it had considered "the record, the case file, the documents contained in the case file, I've considered the pre-sentence investigation, which I do incorporate into the record at this point, and all of the factual information contained therein." The trial court further noted that it had considered the victim impact statement and the letter provided by Liming's paternal grandfather.

{¶ 12} The trial court next addressed restitution for Payne's funeral expenses – an amount that totaled $2,462. Upon determining the amount of restitution requested was accurate, the trial court asked Liming if he had any objection to that amount being ordered as restitution. Liming responded by stating "No, sir." The trial court then ordered Liming to pay restitution to Payne's family in the amount of $2,462. The trial court, however, informed Payne's family that it would be unlikely that any restitution would be "paid anytime soon, but it is an order that could be converted to a civil setting to pursue collection proceedings."

{¶ 13} Turning back to its sentencing decision, the trial court then reiterated that it had considered the sentencing memoranda filed by both Liming and the state, the PSI, the victim impact statement, an e-mail sent by an investigating officer in this case, Detective Ken Mullis, the letter provided by Liming's paternal grandfather, as well as "all of the statements that were made here today from all concerned, both counsel, Mr. Liming, and all of the folks, friends and family of Mr. Payne who have spoken here today." Consideration, as noted by the trial court, meant that it had "read them thoroughly, considered the arguments and the facts, and have taken those arguments and facts into consideration."

{¶ 14} Continuing, the trial court stated that it had "further considered the purposes and principles of sentencing under 2929.11 and I have considered the seriousness and recidivism factors under Revised Code section 2929.12." The trial court then specifically addressing each of these factors noting the offenses were "very, very serious" when considering Liming's "active participation in a criminal enterprise over nearly two years where he was again actively involved in the trafficking of multiple different dangerous drugs."

{¶ 15} The trial court also noted that because "the drug involved here [U-47700] was so potent and so dangerous I believe [it] does make these offenses more serious than conduct normally constituting the offense." The trial court then again noted its finding that the "potency and lethality" of U-47700, when taken in conjunction with the fact Liming was also involved in trafficking LSD, Alprazolam (Xanax), hashish, Oxycodone, cocaine, methamphetamine, and MDMA, makes the offenses more serious than conduct normally constituting crimes for which Liming pled guilty.

{¶ 16} The trial court further noted that Liming had a minimal criminal history that

consisted of two minor drug abuse charges as an adult. The trial court, however, determined that multiple factors indicated recidivism was nevertheless more likely in this case. These factors included, but were not limited to, (1) Liming's active engagement in a drug trafficking enterprise for nearly two years, (2) his continued criminal activity after he was adjudicated a delinquent child for the crime if charged as adult would constitute burglary, (3) his jail-house calls wherein Liming stated "I can't stop breaking the law, and I need to" and "this case isn't going to stop me from doing shit," thus calling into question Liming's claimed remorse he set forth in allocution, and (4) his continued drug trafficking even after Payne's death. Therefore, as the trial court noted, "I do find here that * * * recidivism is more likely rather than less likely."

{¶ 17} The trial court next stated:

> The purposes and principles of sentencing in imposing a felony sentence are to protect the public and to punish the Defendant using the minimum sanctions necessary to accomplish those purposes. I'm required to consider the need to incapacitate you, Mr. Liming, the need to deter both you and others from committing future crimes, the need to rehabilitate you, and the need to make restitution to the victims, if possible.

The trial court also stated:

> In terms of deterrence, this case is Exhibit A for illustrating the scourge that drugs are having on our society. Your desire to make easy money without regard for any of the potential consequences to anyone else, coupled with [Payne's] desire to use drugs, resulted in [Payne's] death and you going to prison for an extended period of time.

{¶ 18} The trial court then imposed its sentence ordering Liming to serve eight years in prison for involuntary manslaughter, 12 months in prison for aggravated trafficking in drugs, and a mandatory five years in prison for engaging in a pattern of corrupt activity. The trial court ordered each of the sentences to run consecutively for an aggregate sentence of 14 years in prison. In deciding to order each of the sentences to run consecutively, the trial

- 7 -

court stated:

> I find that the consecutive sentences are necessary to protect the public from future crime and to punish you, and the consecutive sentences are not disproportionate to the seriousness of your conduct and to the danger that you pose to the public.
>
> I further find that at least two of these multiple offenses were committed as part of one or more courses of conduct and that the harm caused by two or more of these multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflect the seriousness of your conduct.

{¶ 19} The trial court then issued the necessary sentencing entries that again noted it had considered the record and oral statements, the PSI, as well as the principles and purposes of sentencing under R.C. 2929.11 and balanced the seriousness and recidivism factors pursuant R.C. 2929.12 prior to issuing its sentencing decision. Liming now appeals, raising two assignments of error for review.

**Appeal**

{¶ 20} Assignment of Error No. 1:

{¶ 21} THE TRIAL COURT ERRED AS A MATTER OF LAW BY IMPROPERLY SENTENCING APPELLANT.

{¶ 22} In his first assignment of error, Liming argues the trial court erred by sentencing him to serve an aggregate 14-year prison sentence. In support, Liming argues the trial court failed to make the necessary consecutive sentence findings as required by R.C. 2929.14(C)(4) prior to imposing consecutive sentences. Liming also argues the trial court did not "truly consider" the principles and purposes of felony sentencing under R.C. 2929.11 and recidivism factors set forth by R.C. 2929.12 prior to issuing its sentencing decision. Liming further argues the trial court erred by ordering him to pay restitution without first determining if he had the present and future ability to pay. We find no merit to any of

- 8 -

Liming's claims.

## Standard of Review

{¶ 23} As with all felony sentences, we review the trial court's sentencing decision under the standard of review set forth in R.C. 2953.08(G)(2). *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 1. Pursuant to that statute, this court may modify or vacate a sentence only if, by clear and convincing evidence, "the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Harp*, 12th Dist. Clermont No. CA2015-12-096, 2016-Ohio-4921, ¶ 7. A sentence is not clearly and convincingly contrary to law where the trial court "considers the principles and purposes of R.C. 2929.11, as well as the factors listed in R.C. 2929.12, properly imposes postrelease control, and sentences the defendant within the permissible statutory range." *State v. Ahlers*, 12th Dist. Butler No. CA2015-06-100, 2016-Ohio-2890, ¶ 8. This court may therefore "increase, reduce, or otherwise modify a sentence only when it clearly and convincingly finds that the sentence is (1) contrary to law or (2) unsupported by the record." *State v. Brandenburg*, 146 Ohio St.3d 221, 2016-Ohio-2970, ¶ 1, citing *Marcum* at ¶ 7.

## Consecutive Sentences

{¶ 24} Liming initially argues the trial court erred by imposing consecutive sentences without first making the necessary consecutive sentence findings as required by R.C. 2929.14(C)(4). We disagree.

{¶ 25} Pursuant to R.C. 2929.14(C)(4), a trial court must engage in a three-step analysis and make certain findings before imposing consecutive sentences. *State v. Blair*, 12th Dist. Butler No. CA2014-01-023, 2015-Ohio-818, ¶ 52. First, the trial court must find a consecutive sentence is necessary to protect the public from future crime or to punish the

offender.  *State v. Dillon*, 12th Dist. Madison No. CA2012-06-012, 2013-Ohio-335, ¶ 9. Second, the trial court must find that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. *State v. Heard*, 12th Dist. Butler Nos. CA2014-02-024, CA2014-02-025, and CA2014-05-118, 2014-Ohio-5394, ¶ 10.  Third, the trial court must find that at least one of the three circumstances listed in R.C. 2929.14(C)(4)(a)-(c) applies; namely:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
>
> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

"A trial court satisfies the statutory requirement of making the required findings when the record reflects that the court engaged in the required analysis and selected the appropriate statutory criteria."  *State v. Setty*, 12th Dist. Clermont Nos. CA2013-06-049 and CA2013-06-050, 2014-Ohio-2340, ¶ 113.

{¶ 26} When imposing consecutive sentences, a trial court is not required to provide a word-for-word recitation of the language of the statute or articulate reasons supporting its findings.  *State v. Coffman*, 12th Dist. Butler No. CA2015-01-014, 2015-Ohio-2990, ¶ 29, citing *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio- 3177, ¶ 27, 29.  "Nevertheless, the record must reflect that the trial court engaged in the required sentencing analysis and made the requisite findings."  *State v. Moore*, 12th Dist. Clermont No. CA2014-02-016, 2014-Ohio-

5191, ¶ 12. The trial court's findings must then be incorporated into its sentencing entry. *Id.*, citing *Bonnell* at ¶ 37. Therefore, "as long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Bonnell* at ¶ 29.

{¶ 27} As noted above, Liming claims the trial court erred by imposing consecutive sentences without first making the necessary consecutive sentence findings as required by R.C. 2929.14(C)(4). This is because, according to Liming, the trial court did nothing more than state the "talismanic words" without ever actually considering the consecutive sentencing factors. Liming, however, can point to nothing in the record to support his claim that the trial court somehow skirted its statutory obligations prior to imposing consecutive sentences. Rather, as the trial court stated in imposing consecutive sentences:

> I find that the consecutive sentences are necessary to protect the public from future crime and to punish you, and the consecutive sentences are not disproportionate to the seriousness of your conduct and to the danger that you pose to the public.
>
> I further find that at least two of these multiple offenses were committed as part of one or more courses of conduct and that the harm caused by two or more of these multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflect the seriousness of your conduct.

{¶ 28} The trial court then incorporated these findings into its sentencing entries. Liming's claim the trial court did nothing more than state the "talismanic words" without ever actually considering the consecutive sentencing factors set forth in R.C. 2929.14(C)(4) lacks merit and is based on nothing more than pure speculation. This is because, as noted by the state, there is no case law to support Liming's claim that the trial court must do anything more than state its findings when the record otherwise reflects that the trial court

engaged in the required sentencing analysis and made the requisite consecutive sentencing findings as required by R.C. 2929.14(C)(4). That is exactly what the trial court did here.

{¶ 29} We also find no merit to Liming's claim that the record does not contain sufficient evidence to support the trial court's consecutive sentence findings. Rather, as noted more fully above, the record contains extensive evidence to support the trial court's decision to impose consecutive sentences. For instance, as the trial court explicitly stated when issuing its sentencing decision, the offenses are "very, very serious" when considering Liming's "active participation in a criminal enterprise over nearly two years where he was again actively involved in the trafficking of multiple different dangerous drugs." The trial court also noted:

> [T]his case is Exhibit A for illustrating the scourge that drugs are having on our society. Your desire to make easy money without regard for any of the potential consequences to anyone else, coupled with [Payne's] desire to use drugs, resulted in [Payne's] death and you going to prison for an extended period of time.

We agree with the trial court's decision. Therefore, because we find no error in the trial court's decision to impose consecutive sentences, Liming's claim the trial court erred by imposing consecutive sentences lacks merit.

**Principles and Purposes of Sentencing**

{¶ 30} Liming also argues the trial court sentencing decision was improper because the trial court did not "truly consider" the principles and purposes of felony sentencing under R.C. 2929.11 and recidivism factors set forth by R.C. 2929.12 prior to issuing its sentencing decision. We again disagree.

{¶ 31} After a full and thorough review of the record, it is clear the trial court fully considered all relevant factors as set forth under both R.C. 2929.11 and 2929.12 prior to

issuing its sentencing decision. Again, as the trial court explicitly stated at the sentencing hearing:

> So justice as defined by our legal system is me applying the statutes that exist, going through the considerations and the facts that I'm required to go through, considering all the facts and circumstances, and then rendering the decision that I believe is appropriate in these circumstances. I'm going to do that and I'm going to explain to everybody, certainly including Mr. Liming, the rationale in terms of why I'm imposing the sentence that I'm imposing.

{¶ 32} The trial court also specifically stated that it had "further considered the purposes and principles of sentencing under 2929.11 and I have considered the seriousness and recidivism factors under Revised Code section 2929.12." This was in addition to the sentencing memoranda filed by both Liming and the state, the PSI, the victim impact statement, the e-mail sent by an investigating officer in this case, Detective Ken Mullis, the letter provided by Liming's paternal grandfather, as well as "all of the statements that were made here today from all concerned, both counsel, Mr. Liming, and all of the folks, friends and family of Mr. Payne who have spoken here today." Consideration, as noted by the trial court, meant that it had "read them thoroughly, considered the arguments and the facts, and have taken those arguments and facts into consideration." The trial court then reiterated that it had considered both the principles and purposes of sentencing under R.C. 2929.11 and balanced the seriousness and recidivism factors of R.C. 2929.12 prior to issuing its sentencing decision as part of the necessary sentencing entries.

{¶ 33} Liming disagrees with the trial court's sentencing decision and the manner that the trial court balanced the relevant factors set forth under both R.C. 2929.11 and 2929.12. But, as this court has stated previously, "[t]he trial court, in imposing a sentence, determines the weight afforded to any particular statutory factors, mitigating grounds, or other relevant circumstances." *State v. Steger*, 12th Dist. Butler No. CA2016-03-059, 2016-

Ohio-7908, ¶ 18, citing *State v. Stubbs*, 10th Dist. Franklin No. 13AP-810, 2014-Ohio-3696, ¶ 16. "The fact that the trial court chose to weigh various sentencing factors differently than how [Liming] would have weighed them does not mean the trial court erred in imposing [Liming's] sentence." *State v. Abrams*, 12th Dist. Clermont Nos. CA2017-03-018 and CA2017-03-019, 2017-Ohio-8536, ¶ 17. Liming's claim otherwise lacks merit.

**Present and Future Ability to Pay Restitution**

{¶ 34} Liming further argues the trial court erred by ordering him to pay restitution without first considering his present and future ability to pay. We disagree.

{¶ 35} It is undisputed that Liming did not object to the trial court's restitution order at the sentencing hearing, nor did he dispute the amount that was imposed, thereby waiving all but plain error. *State v. Sesic*, 12th Dist. Madison No. CA2012-08-020, 2013-Ohio-2864, ¶ 6. Pursuant to Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Plain error does not exist unless the error is obvious and, but for the error, the outcome of the trial would have been different. *State v. Yanez*, 12th Dist. Butler No. CA2016-10-190, 2017-Ohio-7209, ¶ 23. Notice of plain error must be taken with utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. *State v. Baldev*, 12th Dist. Butler No. CA2004-05-106, 2005-Ohio-2369, ¶ 12.

{¶ 36} Pursuant to R.C. 2929.19(B)(5), before ordering restitution, the trial court must first "consider the offender's present and future ability to pay the amount of the sanction[.]" There are no express factors that must be considered nor are there any specific findings that must be made regarding the offender's ability to pay. *State v. Dandridge*, 12th Dist. Butler No. CA2003-12-330, 2005-Ohio-1077, ¶ 6. The record, however, must contain some evidence to show that the trial court acted in accordance with the statutory requirement that

it consider the offender's present and future ability to pay. *State v. Lang*, 12th Dist. Brown No. CA2011-03-007, 2011-Ohio-5742, ¶ 12, citing *State v. Adkins*, 144 Ohio App.3d 633, 647 (12th Dist.2001). This court looks to the totality of the record to see if this requirement has been satisfied. *State v. Rabe*, 12th Dist. Clermont No. CA2013-09-068, 2014-Ohio-2008, ¶ 74.

{¶ 37} The record in this case clearly indicates the trial court met its statutory requirement that it consider Liming's present and future ability to pay restitution. As the record indicates, prior to setting up his drug trafficking enterprise, Liming, who was then just 26 years old, had graduated from high school and worked as a machinist at an industrial firm and as a manager of a local fast food restaurant. The PSI indicates Liming also attended a technical college after graduating high school where he received vocational training in sports medicine, CPR, and first-aid certifications. The PSI further indicates Liming reported his overall physical health as "good" and that he was not currently under the care of any medical professionals.

{¶ 38} As the record indicates, the trial court specifically stated that it had considered these issues prior to issuing its sentencing decision. We find the same to be true regarding the trial court's decision to order Liming to pay $2,420 in restitution. Therefore, although Liming will be approximately 40 years old upon his release from prison, there is nothing in the record to indicate Liming would be unable to obtain some form of employment that would provide him with sufficient income to pay the trial court's restitution order. Liming's claim otherwise lacks merit.

**No Error in the Trial Court's Sentencing Decision and Order of Restitution**

{¶ 39} The trial court went to great lengths to explain the rationale behind its sentencing decision and order of restitution at the sentencing hearing – an explanation that

spanned a total of 20 of the 37 pages of sentencing hearing transcript. Nothing about the trial court's sentencing decision and order of restitution was improper. Rather, as the trial court noted, "this case is Exhibit A for illustrating the scourge that drugs are having on our society," thereby necessitating the trial court's sentencing decision in this case. We agree. Therefore, because the trial court neither erred by sentencing Liming to serve an aggregate 14-year prison sentence nor erred by ordering Liming to pay $2,420 in restitution, Liming's first assignment of error lacks merit and is overruled.

{¶ 40} Assignment of Error No. 2:

{¶ 41} APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF HIS CONSTITUTIONAL RIGHTS THUS PREJUDICING HIS RIGHT TO A FAIR HEARING.

{¶ 42} In his second assignment of error, Liming argues he received ineffective assistance of counsel when his trial counsel failed to object to the trial court's order of restitution. However, as noted above, the trial court did not err by ordering Liming to pay $2,420 in restitution in this case. Therefore, finding no error in the trial court's decision ordering him to pay restitution, Liming did not receive ineffective assistance of counsel when his trial counsel failed to object to the same. Liming's second assignment of error lacks merit and is overruled.

{¶ 43} Judgment affirmed.

PIPER and M. POWELL, JJ., concur.