[Cite as *State v. Burchell*, 2026-Ohio-2451.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2025-05-038 |
| vs. | : | <u>OPINION AND</u><br><u>JUDGMENT ENTRY</u><br>6/29/2026 |
| HECTOR BURCHELL, | : | |
| Appellant. | : | |
| | : | |

CRIMINAL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2024 CR 16

Mark J. Tekulve, Clermont County Prosecuting Attorney, and Zachary K. Garrison, Assistant Prosecuting Attorney, for appellee.

Brian T. Goldberg, for appellant.

## **O P I N I O N**

**BYRNE, P.J.**

{¶ 1} Hector Burchell appeals from his convictions in the Clermont County Court of Common Pleas, General Division, for multiple counts of rape, gross sexual imposition, and sexual battery. For the reasons described below, we affirm his convictions.

## I. Factual and Procedural Background

{¶ 2} In 2024, a Clermont County grand jury returned a 13-count indictment, consisting of multiple counts of rape, gross sexual imposition, and sexual battery. The indictment stemmed from allegations that Burchell engaged in acts of sexual conduct and sexual contact with a minor victim, "Amy," when Amy was between the ages of ten and 15.[1] Burchell, while not the victim's biological father, lived with Amy for nearly her entire life and was her father figure.

{¶ 3} The matter proceeded to a jury trial. We will summarize the relevant testimony below. But for background, we will first briefly summarize the following evidence which was admitted at trial. The abuse was alleged to have occurred between 2018 and 2023. Amy did not voluntarily disclose the abuse. Instead, in November 2023, Amy's mother ("Mother"), while looking through Amy's room, found a notebook containing a journal entry in which Amy stated that Burchell had been touching her sexually. After speaking with Amy, Mother provided the notebook to police and an investigation ensued. Amy was interviewed at the Mayerson Center for Safe and Healthy Children and a video of that interview was played at trial.

### A. Amy's Testimony

{¶ 4} Amy testified that she was born in 2008 and was 16 years old. While growing up, she lived with Mother and Burchell at their home. Burchell was her father. She had no siblings. When she was ten, Mother and Burchell got divorced. Burchell then moved to an apartment.

---

1. "Amy" is a pseudonym we use in this opinion for purposes of protecting the minor victim's privacy and to improve readability. *In re D.P.*, 2022-Ohio-4553, ¶ 1, fn. 1 (12th Dist.); *The Supreme Court of Ohio Writing Manual*, § 16, at 115 (3d Ed. 2024).

{¶ 5}   Burchell was an over-the-road truck driver and would be gone the entire week and would come home on the weekends. After Burchell moved out of their home, Amy would stay at his apartment each weekend.

{¶ 6}   Amy and Burchell's relationship began to change after he moved to the apartment. Burchell saw nude photographs of Amy on her cell phone. He told Amy to show the photographs to him, and threatened that if she did not, he would tell Mother. After that, Burchell began "ogling" Amy. He would also comment on the way she fit into her clothing.

{¶ 7}   At some point, while at the apartment, Burchell began touching Amy's breasts through her clothes. He would also rub his penis against her butt. This would happen every weekend when she visited him. Burchell would make her "pinky promise" not to tell Mother.

{¶ 8}   Amy kept her promise not to tell Mother what was happening at the apartment. She explained she had many reasons for not revealing the abuse. In her words, "the good outweighed the bad." While at the apartment, Amy enjoyed playing video games, using the computer, relaxing, and having a change of pace. She had a strained relationship with Mother, who was the disciplinarian in the family, and felt that Mother needed a break from her. Burchel also at times gave her money or took her on shopping trips, which felt like rewards. She also had fears that she would not be believed. Burchell told her that the family would "split up" if she told anyone.

{¶ 9}   After a year at the apartment, Burchell moved back in with Mother and Amy. Amy recalled a specific instance of Burchell touching her breast while they were moving Burchell's property back to the home.

{¶ 10} Shortly after Burchell moved back home, and when she was still ten years old, Amy recalled the first of many instances where Burchell placed his penis inside her mouth when he was home on the weekend.

{¶ 11} Amy testified that Burchell would "tug" her hand or her arm and bring her to a hallway in the home's lowest level, outside of a laundry room. He was "pulling" her but not "super forcefully" Each time Burchell did this to her, he would pull her into the hallway. She did not feel like she had a choice.

{¶ 12} Burchell would start by touching her breasts and grinding her butt with his penis. Then he would push down on her shoulders until she was on her knees. Then he would have his hands on her shoulders and on her head, "guiding" her and placing her mouth on his penis. Burchell never ejaculated and she never saw anything come out of his penis.

{¶ 13} The encounter would end by Burchell pulling Amy off of him. He would then tell her to go upstairs and wash her mouth out. Burchell would then go into the a nearby bathroom. Afterwards, Burchell would make her pinky promise not to tell Mother. This pinky promise request happened after nearly every time Burchell abused Amy.

{¶ 14} Amy stated that Burchell's penis was uncircumcised. She described it as like "petting a dog" because the skin moved back and forth. She also recalled tasting baby powder on his penis.

{¶ 15} Amy recalled these incidents happening every week, or every other week after Burchell moved back in. She recalled that it happened in 6th, 7th, 8th, and 9th grades. She recalled that in 8th grade, there was a time when it happened and her Mother was sleeping and almost woke up. She also recalled in 8th grade getting to go to the mall more and this seemed like a "reward" for what Burchell was doing to her. In 9th grade, she recalled fellatio occurring on a leather sectional. The last time fellatio happened was

when she was 15, in 10th grade. She recalled it happening before Halloween, just before Mother discovered the abuse.

{¶ 16} Amy testified that while Burchell was abusing her, he would give her additional "freedoms." This included getting to go to the mall and to buy anything she liked. She would also be allowed to go outside when her Mother had grounded her. Sometimes Burchell would give her money.

{¶ 17} At trial, Amy identified a notebook that she mostly used for "doodling." In it, there was a two-page journal entry. Amy stated that she wrote the entry around Christmas 2022. In the journal, Amy wrote:

> Hector Simeon Burchell touches me in a sexual way. He has since I was younger. I hate it, but he buys me things.
>
> I've cut myself before. My thighs are where I usually go, but my arms and wrists have fallen victim before.
>
> I think of hurting myself. I see dark figures and hear voices/noises. I'm constantly on the verge of relapsing[2] or trying to kill myself.
>
> Where did I go wrong?
>
> I have started to have thoughts of suicide, but I wouldn't actually do it. My mind just keeps going to it. I think of swallowing pills, slitting my wrists, setting myself on fire. I think of running into traffic, jumping out of the car, swerving and having a car accident. I imagine jumping off balconies and out of windows. I don't understand nor like these thoughts.
>
> I also can barely see LMAO. I'm developing an eating disorder. I'm ignoring my friends, pushing family away. I only feel like this sometimes and other times I feel like I'm on top of the WORLD.
>
> I think of cutting and burning myself way too often. I paint my nails and do my face to try to ignore how fucked up I really am.

---

2. Amy explained that "relapsing" referred to cutting herself.

{¶ 18} Amy testified that Mother found the notebook in her room. This happened on a Wednesday and Mother pulled her out of school. They went to a church parking lot that was across the street from the school. Mother showed her the notebook. Amy confirmed to Mother that what she wrote in it was true.

{¶ 19} Amy testified that while the abuse was occurring, she was in a "bad" mental place. She started cutting herself in the 8th grade, when she was 13 years old.

{¶ 20} On cross-examination, Amy agreed that what she wrote in the notebook about seeing dark figures and hearing voices and noises was happening. She was experiencing this "every couple of months" and the hallucinations stopped after she disclosed Burchell's abuse.

### B. Detective Erica Haught's Testimony

{¶ 21} Detective Erica Haught, with the Pierce Township Police Department, was the lead investigator on the case. She obtained a search warrant to photograph Burchell's genitalia and confirmed he was uncircumcised. She also located a bottle of baby powder in a bathroom in the home.

### C. Mother's Testimony

{¶ 22} Mother was called by the defense. Mother testified that she married Burchell in 2000. In or around 2009, she became Amy's legal guardian when Amy was 18 months old.

{¶ 23} Mother testified that Amy would get in trouble at home for lying. She would lie about "kid stuff," such as denying if she ate food she was not supposed to eat, or denying she was eating in her room, or about whether or not she put her laundry away. Amy also got in trouble for stealing. Mother ran a cleaning business and Amy, when was with Mother on a job, had stolen items from client's homes.

{¶ 24} Mother testified that Amy's "acting out" began around the time of Mother's divorce from Burchell and continued after he moved back into the home. She observed that Amy became self-conscious about her body and started wearing baggier clothing and bras designed to flatten her chest.

{¶ 25} Mother stated that Amy was in therapy for about a year and a half before she found the notebook in Amy's room. Mother stated that when she learned of the abuse, she confronted Burchell over the phone. He did not deny the accusation but told her that "he knew where my loyalties lie." She sent him a screenshot of the page of the notebook accusing him of sexual abuse, and he did not respond.

{¶ 26} Mother stated that when a police officer relayed to her that Amy described Burchell as uncircumcised and that his penis tasted like baby powder, she was "floored." She stated that Amy "should know absolutely none of that." Mother confirmed that Burchell was uncircumcised and that he would apply baby powder to the front and back of his underwear.

**D. Verdict and Appeal**

{¶ 27} The jury convicted Burchell on all counts. Burchell appealed, raising three assignments of error.

**II. Law and Analysis**

**A. Fellatio Instruction**

{¶ 28} Burchell's Assignment of Error No. 1 states:

> THE TRIAL COURT COMMITTED PLAIN ERROR BY PROVIDING THE JURY AN IMPROPER DEFINITION OF FELLATIO.

{¶ 29} Burchell argues that the trial court committed plain error by providing jurors with an incomplete definition of "fellatio." Burchell argues that the trial court's fellatio jury instruction failed to advise the jurors that the act of fellatio must be "done for purposes of

obtaining sexual satisfaction" and omitted language related to "oral stimulation." Burchell states that the trial court used an older Ohio Jury Instruction definition of "fellatio," which omits this necessary language. Burchell contends that as instructed, the definition of fellatio was overly broad and allowed the jury to convict without having found "sexual satisfaction" and "oral stimulation."

**1. Plain Error Standard**

**{¶ 30}** Burchell concedes that he did not object to the fellatio instruction and is thus limited to arguing plain error on appeal.

**{¶ 31}** "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). To constitute plain error there must be a deviation from a legal rule. *State v. Barnes*, 94 Ohio St.3d 21, 27, 2002-Ohio-68. Second, the error must be fundamental, palpable, and obvious on the record such that it should have been apparent to the court without an objection. *State v. Barnette*, 2013-Ohio-990, ¶ 30 (12th Dist.). Third, the error must have affected Burchell's substantial rights; that is, the error must have affected the outcome of the trial. *Barnes* at 27. Notice of plain error must be taken with utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. *State v. Liming*, 2019-Ohio-82, ¶ 35 (12th Dist.).

**2. Applicable Law**

**{¶ 32}** Jury instructions are matters that are left to the sound discretion of the trial court. *State v. Brannon*, 2015-Ohio-1488, ¶ 20 (12th Dist.). "This court may not reverse a conviction based upon faulty jury instructions unless it is clear that the jury instructions constituted prejudicial error." *State v. Grimm*, 2019-Ohio-2961, ¶ 26 (12th Dist.). Therefore, when reviewing a trial court's jury instructions, this court must affirm a conviction if the trial court's jury instructions, when taken in their entirety, "'fairly and

correctly state the law applicable to the evidence presented at trial.'" *State v. Mott*, 2023-Ohio-2268, ¶ 18 (12th Dist.), quoting *State v. Davis*, 2016-Ohio-1166, ¶ 28 (12th Dist.).

### 3. The Rape Statute and The Jury Instruction on Fellatio

{¶ 33} Burchell was convicted of six counts of rape in violation of R.C. 2907.02, under the (A)(1)(b) and (A)(2) subsections. Those statutes provide that "No person shall engage in sexual conduct with another . . ." under the respective statutory scenarios.

{¶ 34} As relevant here, the definition of sexual conduct includes "fellatio." R.C. 2907.01(A). "Fellatio" is not defined in the Revised Code. *State v. Barnes*, 1985 WL 8654, *12 (12th Dist.)

{¶ 35} The trial court instructed the jury that "fellatio" means "a sexual act committed with the penis and the mouth." This is apparently the definition of fellatio that was included in an earlier revision of the *Ohio Jury Instructions* ("OJI"), CR § 507.02(A)(1). But the current OJI definition of "fellatio" is different: "the practice of obtaining sexual satisfaction by oral stimulation of the penis." *Ohio Jury Instructions*, CR § 507.02(A)(1), Comment 5 (Rev. Jan. 22, 2011) and § 507.02(A)(2), Comment 5 (Rev. Jan. 20, 2007).

{¶ 36} The current OJI definition is derived from *In re M.D.*, 38 Ohio St.3d 149 (1988). There, the Ohio Supreme Court looked to the definition of fellatio as set forth in Webster's Third New International Dictionary (1986). *Id*. at 152. *M.D.* involved the prosecution of a 12-year-old girl for complicity to commit rape after she instructed a five-year-old boy to put his penis in the mouth of a five-year-old girl. *Id*. at 150. The court found that fellatio, as defined, could not have occurred because neither five-year-old could have been physiologically and emotionally capable of sexual satisfaction or oral stimulation. *Id*. at 152-153.

**4. Analysis**

{¶ 37} Upon consideration, we do not find that Burchell has demonstrated plain error in the fellatio instruction provided by the trial court. The term "fellatio" is undefined by statute and the instruction "a sexual act committed with the penis and the mouth," fairly captures the common understanding of what is entailed in the act of fellatio. Moreover, the definition provided by the court specifically references a "sexual act." For an "act" to be "sexual," there is an implication that the act involved satisfaction, arousal, or stimulation.

{¶ 38} We see no possibility of a changed outcome had the jurors been instructed that fellatio includes sexual satisfaction and oral stimulation. The jurors heard testimony that Burchell guided Amy's mouth onto his penis and used his hands on her head to guide her actions. He never ejaculated, but after he was done he would go to a nearby bathroom. The evidence supports the conclusion that Burchell was using Amy's mouth for oral stimulation and for purposes of achieving sexual satisfaction. There is no reasonable probability that Burchell would have been acquitted or otherwise been not convicted had jurors been provided with the current OJI instruction. Furthermore, we find that the instruction provided sufficiently described the act of fellatio. Accordingly, Burchell has not demonstrated plain error and we overrule his first assignment of error.

**B. Prosecutorial Misconduct**

{¶ 39} Burchell's Assignment of Error No. 2 states:

> MR. BURCHELL WAS DENIED A FAIR TRIAL AND DUE PROCESS OF LAW DUE TO PROSECUTORIAL MISCONDUCT COMMITTED DURING CLOSING ARGUMENTS.

{¶ 40} Burchell argues that the State committed prosecutorial misconduct in closing arguments. First, Burchell states that the prosecutor presented a prejudicial and

inflammatory argument based on evidence that was not in the record. Second, Burchell argues that the prosecutor made a comment that impermissibly shifted the burden of proof. Burchell notes that his counsel objected to both instances and both objections were sustained by the trial court.

### 1. Standard of Review

{¶ 41} A court will find prosecutorial misconduct only when the conduct complained of was improper and prejudicially affected substantial rights of the defendant. *State v. Sanchez-Garza*, 2017-Ohio-1234, ¶ 43 (12th Dist.), citing *State v. Layne*, 2010-Ohio-2308, ¶ 58 (12th Dist.). The focus of an inquiry into allegations of prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor. *Id.*, citing *State v. Gray*, 2012-Ohio-4769, ¶ 57 (12th Dist.). Therefore, a finding of prosecutorial misconduct will not be grounds for reversal unless the defendant has been denied a fair trial because of the prosecutor's prejudicial conduct. *Id.* citing *Layne* at ¶ 60. "The Constitution does not guarantee an 'error free, perfect trial . . . .'" *State v. Landrum*, 53 Ohio St.3d 107, 112 (1990), quoting *United States v. Hasting*, 461 U.S. 499, 508 (1983).

### 2. Evidence to Support Argument

{¶ 42} During closing argument, the defense presented argument highlighting the lack of physical evidence in the case. In the State's rebuttal, the prosecutor argued that Burchell made a conscious decision to ensure he did not leave physical, recoverable evidence, stating:

> Think about what he did to her. He dragged her down the stairs, had her get on her knees, and just before he was about to ejaculate, he sent her upstairs. Go brush your teeth. Wash your face. What'd he do? Stepped back into the bathroom. He went right to the bathroom. Why do you think he was having her do that by the bathroom? Because he then finished himself. He ejaculated in that bathroom so there would be no trace of semen.

{¶ 43} Defense counsel objected on the basis that the argument was not based on evidence admitted at trial. The court sustained the objection, instructed the jury to disregard the statement and not consider it for any purpose, and struck the statement from the record.

{¶ 44} Burchell argues that the prosecutor's suggestion that he ejaculated in the bathroom after abusing Amy was not supported by any evidence at trial. Burchell further argues that the suggestion was highly prejudicial and inflammatory.

{¶ 45} Upon review, we do not find that the prosecutor's statement was improper or that it prejudicially impacted Burchell's substantial rights. The evidence presented to the jury was that Burchell always retreated to the bathroom after forcing Amy to fellate him, and that he never ejaculated during the abuse. The prosecutor's comment was in response to the defense argument that the State lacked any physical evidence, such as semen or DNA, confirming that Burchell committed these crimes. The prosecutor's argument suggested what a reasonable juror could conclude if they believed Amy's testimony: that physical evidence was not available because Burchell ejaculated in the bathroom after abusing Amy. This was a fair inference that could be made from facts in the record. *State v. King*, 2023-Ohio-875, ¶ 55 (12th Dist.).

{¶ 46} Even if we determined that the prosecutor's argument was improper, which we do not, the trial court sustained the objection and specifically instructed jurors not to consider the argument for any purposes during their deliberations. We presume that jurors followed the trial court's admonitions. *Id*. at ¶ 53. Accordingly, we find no prosecutorial misconduct in this instance.

### 3. Improper Burden Shifting

{¶ 47} During closing argument, the defense argued that the lead investigator, Detective Haught, never reviewed any of the text messages between Amy and Burchell.

During the State's rebuttal, the prosecutor responded to this argument by stating that Amy's cell phone records were not necessary because the evidence presented at trial was that Mother was constantly checking Amy's phone because Amy had previously been in trouble for her use of the phone, and Burchell would have been aware that Mother would have seen any improper communications. The prosecutor then stated: "Guess who has the same subpoena power that the State of Ohio has?"

{¶ 48} Defense counsel objected, citing a burden shift. The court sustained the objection.

{¶ 49} Burchell concedes that case law supports the contention that a prosecutor may comment on the failure of the defense to subpoena a witness or records and that such commentary does not constitute burden-shifting. However, Burchell urges this court to find that such commentary does constitute improper burden-shifting.

{¶ 50} It is "long-standing precedent" that "the state may comment upon a defendant's failure to offer evidence in support of its case." *State v. Collins*, 89 Ohio St.3d 524, 527, 2000-Ohio-231. *Accord State v. Frazier*, 1996 WL 679700, *2 (12th Dist. Nov. 25, 1996) ("A prosecutor may properly comment upon the defendant's failure to present exculpatory evidence during closing arguments.") This extends to the prosecution responding to defense counsel's contention that the state should have subpoenaed telephone records with the argument that the defendant could have provided those records if he believed they would be exculpatory. *State v. Encarnacion*, 2017-Ohio-5530, ¶ 16 (10th Dist.).

{¶ 51} We decline Burchell's invitation to second-guess long-standing precedent. We do not find that the prosecutor's comment constituted impermissible burden shifting. The prosecutor properly responded to defense counsel's argument that the State failed

to conduct a thorough investigation. The prosecutor's point was that the defense had the ability to subpoena those records if the defense believed them to be exculpatory.

{¶ 52} Because the comment was not improper, Burchell has not demonstrated prosecutorial misconduct.

{¶ 53} We overrule Burchell's second assignment of error.

### C. Sufficiency and Weight of the Evidence

{¶ 54} Burchell's Assignment of Error No. 3 states:

> MR. BURCHELL'S CONVICTIONS WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE AND ARE CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 55} In his third assignment of error, Burchell contends that the state submitted insufficient evidence to convict him of any of the offenses. First, Burchell argues that the state's case, and all the offenses for which he was convicted, were based entirely on the testimony of Amy, who was an unreliable witness for various reasons. Second, Burchell contends that the state submitted insufficient evidence of force on the six rape counts. Burchell also argues that the verdicts were against the manifest weight of the evidence on similar grounds.

### 1. Standards of Review

{¶ 56} "The standards governing sufficiency and manifest-weight challenges are well settled." *State v. Evans*, 2026-Ohio-1237, ¶ 28 (12th Dist.).

{¶ 57} The sufficiency-of-the-evidence standard of review "requires a determination as to whether the state has met its burden of production at trial." *State v. Boles*, 2013-Ohio-5202, ¶ 34 (12th Dist.). When making this determination, "[t]he relevant inquiry is 'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven

beyond a reasonable doubt.'" *State v. Roper*, 2022-Ohio-244, ¶ 39 (12th Dist.), quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. When conducting this review, "appellate courts do not assess whether the prosecution's evidence is to be believed but whether, if believed, the evidence supports the conviction." *State v. Carter*, 2018-Ohio-29, ¶ 7 (8th Dist.), citing *State v. Yarbrough*, 2002-Ohio-2126, ¶ 79-80. Therefore, when determining whether a defendant's conviction was supported by sufficient evidence, "[t]his court merely determines whether there exists any evidence in the record that the trier of fact could have believed, construing all evidence in favor of the state, to prove the elements of the crime beyond a reasonable doubt." *State v. Brummett*, 2024-Ohio-2332, ¶ 9 (12th Dist.).

{¶ 58} "Manifest weight presents a different question." *Evans* at ¶ 29. "[T]he manifest-weight-of-the-evidence standard of review applies to the State's burden of persuasion." *State v. McCollum*, 2026-Ohio-393, ¶ 13 (12th Dist.), citing *State v. Messenger*, 2022-Ohio-4562, ¶ 26. When determining whether a jury's verdict is against the manifest weight of the evidence, this court, sitting as the "thirteenth juror," reviews the entire record, weighs the evidence and all reasonable inferences, and considers the credibility of the witnesses who testified at trial. *State v. Brown*, 2025-Ohio-2804, ¶ 30. Following this review, we then determine, in resolving any conflicts in the evidence, whether the jury clearly lost its way and created a manifest miscarriage of justice that requires reversal of the jury's verdict and the ordering of a new trial. *State v. Jordan*, 2023-Ohio-3800, ¶ 17. Such a determination is rare, however, arising only in exceptional cases where the evidence presented at trial weighs heavily against the jury's verdict and in favor of acquittal. *State v. Nkoyi*, 2024-Ohio-3144, ¶ 41 (12th Dist.). "This may occur only when there is unanimous disagreement with the jury's verdict." *State v. Palma*, 2025-Ohio-1318, ¶ 9 (12th Dist.).

## 2. Witness Credibility

{¶ 59} Burchell argues that there was insufficient evidence to convict him because the State's case rested entirely on Amy's testimony. Burchell points to Amy's admission in the notebook, and at trial, that during the abuse she was hallucinating and hearing noises and voices that were not real. Burchell also points to Amy's history of lying and stealing.

{¶ 60} Burchell presents these arguments as an attack on the sufficiency of the evidence supporting the state's case. But these are actually arguments attacking Amy's credibility. Credibility issues go to the weight of the evidence, not its sufficiency. *State v. Greene*, 2024-Ohio-35, ¶ 61 (12th Dist.).

{¶ 61} As to sufficiency, it is true that the state's case was based *primarily* on Amy's testimony. However, it is well settled that the testimony of one witness is enough to prove a fact of consequence. *State v. Mahmoud*, 2024-Ohio-4624, ¶ 14 (12th Dist.), citing *State v. Ruggles*, 2020-Ohio-2886, ¶ 53 (12th Dist.)

{¶ 62} Amy provided testimony that, if believed, would provide jurors with sufficient evidence upon which they could convict Burchell of all counts of the indictment. That is, Amy testified to acts of sexual contact and sexual conduct occurring on a regular basis between the ages of ten and 15. Her testimony, if believed, was sufficient to establish the facts necessary to prove every count of the indictment.

{¶ 63} As to the weight of the evidence, any issues regarding Amy's credibility, such as her issues with hallucinations, lying, and stealing, were extensively examined by defense counsel at trial and were known to jurors. Notably, the evidence presented indicated that Amy's lying and behavioral problems coincided with the time that she alleged the abuse was occurring. It is reasonable to presume that a child being abused might exhibit similar behaviors.

{¶ 64} In any event, the State's case did not rely *entirely* on Amy's testimony. The State corroborated Amy's allegations by verifying that Burchell lived in the apartment at the time that Amy described the abuse beginning there. The notebook entry provided additional corroboration. The fact that Amy was aware that Burchell was uncircumcised, and her description of the physical feel of Burchell's foreskin, also bolstered her credibility. Her testimony was further credited by the fact that she described tasting baby powder on Burchell's penis and Mother's testimony that Burchell used baby powder. Finally, the State submitted the videotaped interview of Amy at the Mayerson Center. Amy's interview was consistent with her trial testimony. Accordingly, we find that Burchell's convictions were supported by the greater weight of the evidence.

### 3. Force

{¶ 65} Burchell also argues that the evidence submitted at trial was insufficient to demonstrate the use of force in conjunction with the rape offenses. He argues that Amy's testimony that he "tugged" her towards the hallway, pushed down on her shoulders, and guided her head with his hand does not constitute sufficient force to meet the requirements of the rape statute and the force used did not go beyond the necessary amount of force required to commit the offense.

{¶ 66} Burchell was convicted in Counts Eight, Ten, and Twelve of rape under R.C. 2907.02(A)(2). That statute provides: "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."

{¶ 67} In Counts Two, Four, and Six, Burchell was convicted of rape where the minor victim was less than 13 years of age, in violation of R.C. 2907.02(A)(1)(b). "Force" is not a required element of rape in violation of R.C. 2907.02(A)(1)(b). However, use of

force was a necessary element for a sentencing enhancement on these offenses under R.C. 2971.03(B)(1)(c).

{¶ 68} "Force" is statutorily defined as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1). "The rape statute requires that some amount of force must be proven beyond that force inherent in the crime itself." (Cleaned up.) *In re P.M.S.*, 2023-Ohio-3825, ¶ 11 (12th Dist.).

{¶ 69} But "force" need not be overt and physically brutal. *Id*. In that respect, the trial court gave an additional instruction on force because Burchel was a parental figure in Amy's life. The instruction provided was "when the relationship between the victim and the Defendant is one of child and custodian, guardian, or person in loco parentis, the element of force need not be openly displayed or physically brutal. It can be subtle, slight, psychological, and/or emotionally powerful. Evidence of an express threat of harm or evidence of significant physical restraint is not required."

{¶ 70} As it relates to sexual offenses against children, the amount of force necessary to commit the offense "'depends upon the age, size and strength of the parties and their relation to each other.'" *State v. Venters*, 2025-Ohio-3111, ¶ 39 (12th Dist.), quoting *State v. Eskridge*, 38 Ohio St. 56 (1988), paragraph one of the syllabus.

{¶ 71} Here, the evidence presented at trial was that Burchell, an adult male and father figure to Amy, would "tug" on Amy's hand or her arm and take her to the hallway where the abuse always occurred. Amy stated that Burchell was "pulling" her, but not "super forcefully." He would then push down on her shoulders and would place his hands on her head and would guide her head during the abuse. Amy specifically testified that while Burchell was directing her actions, she "did not feel like she had a choice." Amy's testimony about Burchell pulling or tugging her to the hallway, pushing her down to her knees, and guiding her head while she fellated him, established force that went beyond

the necessary force to commit the offenses and sufficiently established the use of force to commit all six rape offenses.

{¶ 72} Moreover, the evidence in this case established force through subtle and psychological means. We have held that "A child's will can be overcome by fear and duress when an important figure of authority tells the child to do something, and commands the child not to tell anyone about it." *State v. Grant*, 2015-Ohio-723, ¶ 23 (12th Dist.)

{¶ 73} The evidence was that Burchell was a father figure to Amy, and that Amy recognized Burchell as her father. Amy testified that after almost every incident, Burchell would make her "pinky promise" not to tell her Mother. Burchell also threatened that the family would split up if she told her Mother. Burchell's use of psychological methods to constrain Amy from revealing the abuse also establishes the necessary force to sustain his convictions.

{¶ 74} For the foregoing reasons, we overrule Burchell's third assignment of error.

### III. Conclusion

{¶ 75} Burchell has not established plain error in the court's instruction on fellatio. The State did not commit prosecutorial misconduct in responding to Burchell's arguments in closing. And Burchell's convictions are supported by sufficient evidence and the greater weight of the evidence.

{¶ 76} Judgment affirmed.

PIPER and M. POWELL, JJ., concur.

# **J U D G M E N T   E N T R Y**

The assignments of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed.

It is further ordered that a mandate be sent to the Clermont County Court of Common Pleas for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.

*/s/ Matthew R. Byrne, Presiding Judge*

*/s/ Robin N. Piper, Judge*

*/s/ Mike Powell, Judge*